ELIZABETH C. JENKINS v. HARVEY C. HINES COMPANY.

(Filed 24 March, 1965.)

1. **Trial § 21—**

    On motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to plaintiff, and defendant's evidence which is favorable to plaintiff must also be considered in such light.

2. **Food § 1—    Evidence permitting inference that bottled drink exploded in plaintiff's hand because of defect in bottle held to take case to jury.**

    Evidence tending to show that a drink bottled by defendant exploded in plaintiff's hand as she was attempting to remove the bottle from a cardboard carton and place it in a refrigerator in her kitchen, and that another bottle prepared by defendant exploded in the hands of another person some two days later under substantially similar conditions, together with evidence offered by defendant that some of the empty bottles returned to his plant for refilling had chips and cracks, that a defective bottle did occasionally get past the inspectors, that bottles had been seen to break or broken bottles were seen in the washers, and that the cap on all bottles was so designed as to allow internal pressure to escape in the event that pressure became abnormally high, *is held* sufficient to be submitted to the jury on the issue of the bottling company's negligence. Whether evidence of

a single similar instance of the breaking of a bottle is alone sufficient to overrule nonsuit, *quaere?*

**3. Same—**

Evidence that as plaintiff was taking a bottled drink from a cardboard carton to place it in a refrigerator in her kitchen the bottle exploded and that some two days thereafter a bottled drink prepared by the same bottler exploded while in the hands of the purchaser as he was taking it from the "drink box", and that on neither occasion did the bottle strike any object while in the presence or possession of the person in whose hands it exploded, *held* to show substantially similar circumstances and reasonable proximity in time within the rule of competency.

**4. Trial § 11—**

While counsel is entitled to argue the whole case, the law and the facts, to the jury, G.S. 84-14, it is error for the court to permit counsel to argue matters without factual or legal justification upon the evidence.

**5. Same; Damages § 14.1—**

Where plaintiff testified that her injury no longer caused pain in her finger but that she had only a drawn feeling amounting to discomfort, argument of counsel to the effect that her life expectancy amounted to so many minutes and that compensation for her *pain* at one cent per minute of such time would amount to a specified figure, *is held* improper as not being justified factually or legally upon the evidence.

**6. Appeal and Error § 54—**

Whether the Court will grant a partial new trial rests in its sound discretion, and in this case a new trial is awarded on all of the issues, notwithstanding prejudicial error is determined upon the issue of damages alone.

HIGGINS, J., dissents on ground nonsuit should have been entered.

APPEAL by defendant from *Fountain, J.,* February 1964 Session of LENOIR, docketed and argued as No. 308 at Fall Term 1964.

Plaintiff seeks to recover damages for injuries caused by the explosion of a bottle of Coca-Cola she had purchased from a retail grocery store in Kinston, North Carolina. She alleged the Coca-Cola had been bottled and sold by defendant to said store.

Plaintiff alleged the explosion of said bottle of Coca-Cola and her injuries were proximately caused by the negligence of defendant in that defendant had filled a defective and weakened bottle with carbonated Coca-Cola in such manner that the pressure in the bottle was excessive to such extent that defendant knew or should have known that, "in the ordinary handling, storing or use of the same," such bottle was likely to explode and injure persons handling or near such bottle.

Answering, defendant, a corporation, averred that, in August 1961 and for many years prior thereto, it was engaged in Kinston, North

Carolina, in the business of bottling Coca-Cola for sale to the public at wholesale and retail. It denied all allegations relating to its alleged actionable negligence.

Evidence was offered by plaintiff and by defendant.

Answering the two issues submitted, the jury (1) found that plaintiff was injured by the negligence of defendant as alleged in the complaint and (2) awarded damages in the amount of $15,000.00. Judgment for plaintiff in accordance with said verdict was entered. Defendant excepted and appealed.

*LaRoque, Allen & Cheek and White & Aycock for plaintiff appellee.*
*Whitaker, Jeffress & Morris for defendant appellant.*

BOBBITT, J. Defendant assigns as error the denial of its motion, at the conclusion of all the evidence, for judgment of involuntary nonsuit.

In *Styers v. Bottling Co.,* 239 N.C. 504, 80 S.E. 2d 253, Parker, J., based on decisions cited, summarizes the legal principles pertinent to decision on this appeal as follows:

"It is well settled law in North Carolina that proof of injury caused by the explosion of a bottle containing a carbonated beverage, standing alone, is not sufficient to carry the case to the jury on the ground of actionable negligence. The principle of *res ipsa loquitur* is not applicable. *Davis v. Bottling Co.,* 228 N.C. 32, 44 S.E. 2d 337; *Enloe v. Bottling Co.,* 208 N.C. 305, 180 S.E. 582; *Cashwell v. Bottling Works,* 174 N.C. 324, 93 S.E. 901.

"The installation by the bottler of modern machinery and appliances, such as is in general and approved use, does not *ipso facto* exculpate the defendant from liability. *Enloe v. Bottling Co., supra; Grant v. Bottling Co.,* 176 N.C. 256, 97 S.E. 27.

"Direct evidence of actionable negligence on defendant's part is not requisite; such negligence may be inferred from relevant facts and circumstances. *Enloe v. Bottling Co., supra; Broadway v. Grimes,* 204 N.C. 623, 169 S.E. 194; *Dail v. Taylor,* 151 N.C. 284, 66 S.E. 135.

"In cases where damages are sought for injuries caused by such explosion, when the plaintiff has offered evidence tending to show that like products filled by the same bottler under substantially similar conditions, and sold by the bottler at about the same time have exploded, there is sufficient evidence to carry the case to the jury, as such facts and circumstances permit the inference that the bottler had not exercised that degree of care required of him under the circumstances. Such similar instances are allowed to be shown as evidence of a probable like occurrence at the time of plaintiff's injury when, and only when, ac-

companied by proof of substantially similar circumstances and reasonable proximity in time. *Davis v. Bottling Co., supra; Ashkenazi v. Bottling Co.,* 217 N.C. 552, 8 S.E. 2d 818; *Enloe v. Bottling Co., supra; Broadway v. Grimes, supra; Perry v. Bottling Co.,* 196 N.C. 175, 145 S.E. 14; *Grant v. Bottling Co., supra.*"

In accord: *Graham v. Bottling Co.,* 257 N.C. 188, 125 S.E. 2d 429.

Plaintiff offered evidence tending to show:

In August 1961 Douglas L. Baker, who operated a self-service retail grocery store under the name of Parkview Superette, purchased wholesale from defendant the bottled Coca-Colas sold in said store. Defendant made deliveries twice (occasionally three times) a week. Defendant's agent (driver) would remove six-bottle pasteboard cartons from wooden crates and stack them six to eight cartons high on the Coca-Cola display stand.

On Friday, August 18, 1961, or on Saturday, August 19, 1961, plaintiff, a regular customer of Parkview Superette, purchased a six-bottle pasteboard carton of regular size Coca-Colas, had it placed in her car and drove to her home. Upon arrival, the Coca-Colas were placed in a refrigerator in a room in a "little house," located "about 100 feet" from plaintiff's home. The Coca-Colas remained in said (extra) refrigerator until plaintiff's husband brought the carton into the kitchen of plaintiff's home about 1:00 p.m. on Sunday, August 20th, and placed it on a counter in the kitchen. Shortly thereafter, while plaintiff was taking one of the bottles from said carton to place it in her (kitchen) refrigerator, it exploded in her right hand. On account of serious injury to her right index finger and other cuts received from "flying glass," plaintiff was taken quickly to a hospital.

After the explosion, the lower part of the bottle, "maybe a third," was in plaintiff's right hand. On the floor, there was a section of the neck of the bottle, "an inch and a half maybe," with the cap or crown on it. There was glass "all over the kitchen and into the dining room from the Coca-Cola bottle." The broken glass was put in a garbage can and disposed of the next day by plaintiff's cook.

On August 22, 1961, one John Kassouf, who had leased from plaintiff's husband a concession stand in a tobacco warehouse, was taking a bottled Coca-Cola from the "drink box." The bottle exploded in his hand, the glass breaking into "some pretty good size and some smaller pieces." No one was injured. Kassouf had purchased Coca-Colas, including the bottle that exploded, from defendant. They had been delivered to him on Friday, August 18th, when Kassouf was stocking the concession stand for the opening of the tobacco market on Tuesday, August 22nd. It was stipulated "that all Coca-Colas bottled by the de-

fendant during 1961 were bottled under substantially similar conditions."

In addition, plaintiff offered evidence tending to show: (1) that the Coca-Colas purchased by plaintiff from Parkview Superette did not strike any object while in her possession or presence; (2) that these Coca-Colas struck no object while in the possession or presence of Mr. Jenkins on Sunday, August 20th; and (3) that the bottle of Coca-Cola Kassouf was bringing out of the "drink box" on Tuesday, August 22nd, after it had been delivered "inside the concession stand," struck no object while in Kassouf's possession or presence.

The testimony as to the explosion in Kassouf's hand on August 22, 1961 of a bottle of Coca-Cola sold and delivered to him by defendant on August 18, 1961, was sufficient, in our opinion, to support a finding that this incident occurred under "substantially similar circumstances and reasonable proximity in time" as the incident when plaintiff was injured by the exploding bottle of Coca-Cola.

Defendant asserts the rule adopted by this Court requires proof of more than one "similar instance." Certainly, the rule as stated refers to "similar instances." With reference to the explosion of a bottle containing a carbonated drink, we find no decision of this Court to the effect that evidence of one similar instance is sufficient to carry the case to the jury. On the other hand, we find no decision where the plaintiff was nonsuited on the ground evidence of one similar instance was insufficient.

When we consider decisions involving deleterious matter in a bottled drink, the following appears: In *Hampton v. Bottling Co.*, 208 N.C. 331, 180 S.E. 584, the third headnote indicates proof of one "similar instance" would be sufficient. However, the record (and less clearly, the opinion) discloses that proof of more than one such instance was offered. In *Tickle v. Hobgood*, 216 N.C. 221, 4 S.E. 2d 444, and in *Elledge v. Bottling Co.*, 252 N.C. 337, 113 S.E. 2d 435, the plaintiff was nonsuited. Although reference is made to the fact that plaintiff offered evidence of only one "similar instance," this was not the basis of decision.

In *Caudle v. Tobacco Co.*, 220 N.C. 105, 16 S.E. 2d 680, where plaintiff was injured by a fishhook in a plug of chewing tobacco, evidence was offered of one other similar (?) instance. This Court, by a majority of four to three, held the case had been properly submitted to the jury. The following from the dissenting opinion of Barnhill, J. (later C.J.), is noteworthy: "Even if it be conceded that one other instance is sufficient to carry the case to the jury this evidence signally fails to establish the essentials of such other instance under the rule to which we

have consistently adhered." Also, see *Corum v. Tobacco Co.*, 205 N.C. 213, 171 S.E. 78.

In our opinion, whether a case should be submitted to the jury should not depend solely upon whether there is evidence of only one or of more than one "similar instance." Depending upon the circumstances, one such instance may well be of greater significance than two or more others.

Conceding, without deciding, that one such "similar instance," nothing else appearing, may not be sufficient, yet such "similar instance" is a significant evidential circumstance for consideration in determining whether, upon all the evidence, the case is one for the jury.

Defendant's evidence as well as that offered by plaintiff is to be considered in the light most favorable to plaintiff. *Pinyan v. Settle*, 263 N.C. 578, 584, 139 S.E. 2d 863.

Defendant offered evidence tending to show its procedures in handling bottles collected and brought to its plant by its drivers, and its procedures in filling, charging, capping, crating, storing and delivering bottled Coca-Colas. While much of this evidence is favorable to defendant, portions thereof from which inferences favorable to plaintiff may be reasonably drawn include the matters set forth below.

The cost of bottles is defendant's "biggest expense item." In 1961, defendant purchased bottles from Laurens and from Owens-Illinois. However, "(a) good percentage of the empty bottles returned to" defendant's plant were not "originally purchased from our company." In the course of its business, defendant collected empty bottles "purchased in other areas," *e.g.*, Fayetteville and Charlotte. "A good percentage of the bottles" returned to defendant's plant were broken, chipped, scuffed, cracked or "in some way defaced." Ordinarily, a bottle was used from one to three years.

Washing the bottles is the first process. If the boys who put the returned bottles on the loading machine "see a bottle that is chipped on the top or cracked or broken, then they dispose of it before it goes into the washer."

The bottles pass from the washer on a stainless steel conveyor belt toward the filler. Two girls, each of whom is relieved by the assistant plant superintendent for fifteen minutes each hour, observe the bottles for defects as they pass at the rate of 240-250 bottles per minute. These girls sit approximately four or five feet apart. Defendant's plant superintendent testified: ". . . the first girl does occasionally miss a bottle." Again: "I do know that no inspection is made of these bottles from the time they pass the second girl, from then on no local inspection is made of these bottles by any member of our company."

After passing inspection of the two girls, the bottles go to the filler, then to the crowner, then pass the RCA electric eye for final inspection for "any foreign matter that might be in the bottle," then "they are cased automatically 24 to the case," then they are stacked on a "case pallet," "42 cases to the pallet." Thereafter, they are stored until the case pallets are placed by means of a "fork lifter" onto trucks for delivery to customers.

Defendant's plant superintendent testified: "In my experience in the summer of 1961, and after and before, I have seen bottles break or broken bottles in these washers." Again: ". . . I have seen bottles of Coca-Cola break at the filler."

Dr. Beisler, an expert witness, testified that "the Coca-Cola bottle is made to withstand a minimum of four hundred pounds per square inch"; that "the maximum pressure that one could get in a Coca-Cola bottle on vigorous shaking," at a temperature of 100 degrees Fahrenheit, "would be approximately eighty pounds per square inch"; and that a Coca-Cola bottle has five times the strength necessary to withstand the pressure normally present under conditions of 100 degrees Fahrenheit.

Dr. Beisler testified that he had "conducted tests to determine the breaking point of Coca-Cola bottles as the result of a sudden change in temperature"; that "the pressure in a Coca-Cola bottle will increase about one pound per square inch for each one degree temperature rise fahrenheit"; and that "if you decrease the temperature the pressure will fall off about that same amount, about one pound per square inch for each one degree fahrenheit."

Dr. Beisler testified that the "crown or cap on a Coca-Cola bottle is so designed as to allow internal pressure to escape in the event that the pressure were to become abnormally high."

Dr. Beisler's admitted testimony and also certain excluded testimony related to sound Coca-Cola bottles.

Based on Dr. Beisler's testimony, it appears that the internal pressure in the bottle handled by plaintiff was not sufficiently high to permit the gas to escape through the crown or cap. If the pressure in the bottle was not "abnormally high," it would seem reasonable to infer that the explosion occurred on account of a defect in the bottle.

When considered in the light most favorable to plaintiff, we are of opinion, and so decide, that the evidence was sufficient to require submission to the jury.

Each of defendant's assignments of error relating to rulings on evidence and to portions of the charge has received careful consideration. Error, if any, in these respects, is not deemed sufficiently prejudicial to justify the award of a new trial.

The record shows that, during the argument of counsel (Mr. Aycock) for plaintiff, the following occurred:

"COUNSEL FOR DEFENDANT OBJECTS TO THE ARGUMENT OF COUNSEL FOR THE PLAINTIFF:

"MR. AYCOCK: I said there are sixty minutes per hour, that the average person sleeps eight hours, that leaves 16 hours, leaves 960 waking minutes, three hundred and sixty-five days a year 350,400 waking minutes in the course of a year.

"MR. JEFFRESS: I anticipate that he was going to evaluate.

"MR. AYCOCK: Take 350,400 waking minutes per year, multiply by 25 years is 8,610,000 waking seconds. This woman is expected to live if she lives the normal expectancy. If we apply one cent per minute for the time she is awake we figure, with her finger paining her, comes to $86,100.00.

"MR. JEFFRESS: We would like the record to show that we object to the computation of counsel on a minute basis for damages.

"OBJECTION, OVERRULED, DEFENDANT EXCEPTS.

"This is DEFENDANT'S EXCEPTION No. 14."

The record contains no further reference to said incident or argument.

Defendant contends there was no factual or legal basis for the quoted argument; that the court's ruling indicated it was proper for the jury to consider the matters referred to in said argument; and that the court's failure to sustain defendant's objection was prejudicial error.

Defendant relies largely on *Botta v. Brunner,* 138 A. 2d 713, 60 A.L.R. 2d 1331, and cases cited therein. In *Botta,* the Supreme Court of New Jersey, reversing in this respect the decision of the Superior Court, Appellate Division, 126 A. 2d 32, approved the action of the trial judge who, on objection, declared a similar argument to be improper as to "the measure of damages for pain and suffering" and directed that it be discontinued. However, the Supreme Court affirmed the portion of the decision of the Appellate Division which awarded plaintiff a new trial, solely as to the issue of damages, on account of a prejudicial error (not relevant here) in the instructions of the trial judge relating to the issue of damages.

In *Botta,* the questions considered and decided by the Supreme Court are stated in the opinion of Francis, J., as follows: "But since the nature of the subject matter (damages for pain and suffering) admits only of the broad concept of reasonable compensation, may counsel for the plaintiff or the defendant state to the jury, in opening or closing, his belief as to the pecuniary value or price of pain and suffering per hour or day or week, and ask that such figure be used as part of a mathematical formula for calculating the damages to be awarded?

Without expressing a personal opinion, may he suggest that the valuation be based on so much per hour or day or week, or ask the jurors if they do not think the pain and suffering are fairly worth so much per hour or day or week — and then demonstrate, by employing such rate as a factor in his computation, that a verdict of a fixed amount of money would be warranted or could be justified?" The Court answered each question, "No."

For full discussion and supporting authorities, reference is made to the opinion of Francis, J. The following excerpts indicate the basis of decision: "There can be no doubt that the prime purpose of suggestions, direct or indirect, in the opening or closing statements of counsel of per hour or per diem sums as the value of or as compensation for pain, suffering and kindred elements associated with injury and disability is to instill in the minds of the jurors impressions, figures and amounts not founded or appearing in the evidence." Again: "They (such suggestions of valuations or compensation factors for pain and suffering) import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis. No one has ever argued that a witness, expert or otherwise, would be competent to estimate pain on a per hour or per diem basis."

For decisions in conflict with *Botta,* see Annotation, "Per diem or similar mathematical basis for fixing damages for pain and suffering." 60 A.L.R. 2d 1347 *et seq.;* 12 Rutgers Law Review 522 *et seq.; Continental Bus System, Inc. v. Toombs (Tex),* 325 S.W. 2d 153.

It is noted that our statute, G.S. 84-14, in pertinent part, provides: "In jury trials the whole case as well of law as of fact may be argued to the jury." Too, under our decisions, "(c) ounsel have a wide latitude in arguing their cases to the jury, and have the right to argue every phase of the case supported by the evidence, and to argue the law as well as the facts." 4 Strong, N. C. Index, Trial § 11, p. 298.

Disposition of this appeal in defendant's favor does not require that we accept without qualification the decision and reasoning in *Botta.* Plaintiff testified: "Answering the question whether at the present time my hand or finger pains me, it feels like it is drawn up, or being drawn; it feels almost like it looks, tight. It doesn't interfere with my rest at night now. It doesn't give me any pain other than the feeling of being drawn. That is a discomfort." In the light of plaintiff's testimony, it is our opinion, and we so decide, that the argument of plaintiff's counsel to which defendant objected was without factual or legal justification and was prejudicial to defendant. Hence, for error in overruling its objection to said argument, defendant is entitled to a new trial.

"It is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant - a partial new

trial." *Lumber Co. v. Branch,* 158 N.C. 251, 253, 73 S.E. 164; *Johnson v. Lewis,* 251 N.C. 797, 804, 112 S.E. 2d 512. After full consideration, this Court, in the exercise of its discretion, sets aside the verdict and judgment and awards a new trial on *all* issues raised by the pleadings.

New trial.

HIGGINS, J., dissents on ground nonsuit should have been entered.