PAUL HAIGLER WEEKS v. DOROTHY WALSH HOLSCLAW AND GARY LEE WALSH

No. 58PA82

(Filed 5 October 1982)

**Damages § 3.4— per diem arguments with cautionary jury instructions proper**

It is not improper for counsel to use per diem arguments to the jury in assessing damages for pain and suffering where the evidence of pain is sufficient to provide a "factual or legal justification" for the argument and where the trial judge instructs the jury that they are not to be governed by the amount of damages suggested by counsel for whatever unit of time counsel employed, that their argument does not constitute evidence but is merely an approach to the damage issue which the jury may consider but need not adopt,

and that the jury's ultimate obligation is to arrive at a lump sum amount which, in its view, is supported by the evidence and is fair and just to both the plaintiff and the defendant.

Justice MARTIN took no part in the consideration or decision of this case.

Justice MEYER dissenting.

BEFORE *Judge William Z. Wood* and a jury at the 15 December 1980 Civil Session of CALDWELL Superior Court plaintiff was awarded $10,780 in compensatory damages for personal injuries. The Court of Appeals affirmed. 55 N.C. App. 335, 285 S.E. 2d 321 (1982). The Supreme Court granted defendants' petition for discretionary review on 30 March 1982.

*Beal and Mu, P.A., by Beverly T. Beal, for plaintiff appellee.*

*Todd, Vanderbloemen and Respess by J. R. Todd, Jr., for defendant appellants.*

EXUM, Justice.

The principal question raised by this case is whether a plaintiff seeking damages for pain may make what is commonly referred to as a "per diem" argument[1] that the jury consider a formula by which a monetary value is assigned to a particular unit of time and this value is multiplied by the total number of such units during which the pain persisted. We hold that such an argument is permissible, but when it is used the trial judge should give appropriate cautionary jury instructions.

The parties stipulated that defendant Holsclaw was negligent in operating her automobile and caused the accident in which plaintiff was injured on 18 April 1979. They also agreed

---

1. This kind of argument is commonly called a "per diem" argument because in its most usual form plaintiff selects one day as the unit of time. *See, e.g., Beagle v. Vasold,* 65 Cal. 2d 166, 417 P. 2d 673, 53 Cal. Rptr. 129 (1966) (argument approved); *Botta v. Brunner,* 26 N.J. 82, 138 A. 2d 713 (1958) (argument rejected); and *Worsley v. Corcelli,* 119 R.I. 260, 377 A. 2d 215 (1977) (argument approved provided cautionary instructions given). Occasionally, as in the instant case, plaintiff uses smaller units of time. *See, e.g., Thompson v. Kyles,* 48 N.C. App. 422, 269 S.E. 2d 231, *discretionary review denied,* 301 N.C. 239, 283 S.E. 2d 135 (1980) (hours and minutes) (argument approved). The principle is the same whatever unit of time is used; and for ease of reference we shall refer to such argument as a "per diem" argument.

Holsclaw's negligence would be imputed to defendant Walsh, the owner of the automobile. The only issue for trial was the amount of plaintiff's damages.

Plaintiff's evidence at trial tended to show the following:

On 18 April 1979 he was driving his automobile on Highway 90 near Lenoir, North Carolina. His wife was a passenger and they were going forty to fifty miles per hour. Without warning plaintiff's 1974 Pinto automobile was hit from the rear. His head "snapped forward" and he felt "a definite snap and pain in my neck." He managed to stop the car, got out and sat down on the rear bumper of his Pinto. Plaintiff was taken by ambulance to Caldwell Memorial Hospital emergency room where he was examined by Dr. Theodore Hairfield. Upon the basis of his clinical examination and X-rays, Dr. Hairfield diagnosed plaintiff's injury as a cervical sprain or "sprain of the neck on the left side." He prescribed a muscle-relaxant and heat treatments. He subsequently saw plaintiff in an office visit on 23 April, during which he told him to continue the medication and heat. He noted plaintiff suffered pain on movement of the neck. On 2 May he noted that plaintiff "continued to have pain and difficulty with shoulder movement and lifting, . . . tenderness along the shoulder blade area and the folder muscle of the shoulder," and "tenderness along the spinal column." He asked plaintiff to continue his heat applications and to restrict use of his left arm. On 8 May plaintiff continued to have some limitation of neck movement and pain, so Dr. Hairfield prescribed a new medication to relieve inflammation and pain. Dr. Hairfield examined plaintiff again on 24 May and noted little change, but on 13 June plaintiff showed "considerable improvement." He "was able to move without severe limitation." The doctor started him on an exercise program to improve his muscle tone and strength. On 7 August the X-rays were repeated. There was no appreciable change. Dr. Hairfield told plaintiff to continue his exercises and return if necessary. On 25 August 1980 Dr. Hairfield examined plaintiff for right shoulder pain. Plaintiff made no complaint about his left shoulder.

Plaintiff was finally examined five days before trial, and Dr. Hairfield found he continued to suffer discomfort on neck movement and had some limitation of shoulder movement. Plaintiff had approximately one-quarter inch less muscle mass in his left arm than his right.

In Dr. Hairfield's opinion plaintiff's injuries "would have some permanency" since they had existed for so long after his accident. The doctor testified, "So the fact that he had had symptoms . . . for four months would make me believe at that time that I would be surprised if he got completely recovered. . . ."

Plaintiff, fifty years old at the time of trial, testified that he had not had any shoulder or neck pain before the accident and that "I have experienced pain almost constantly since the day of the accident . . . . The pain is greater after I have been on my feet all day. At night sometimes I can't sleep because of the pain . . . . There is pain in the morning. It usually takes me 30 to 45 minutes to get unwound to where I can move around." He also stated, "Before the accident, I would jog, play golf. I like to cut wood. I can't do that now. I am not able to play golf now; I do not play softball." Furthermore, his injury has caused him difficulty and pain in completing his tasks as a salesman in a men's clothing store, and in doing household chores. Plaintiff's wife confirmed that he takes pills for pain almost daily, moves stiffly and slowly, and no longer helps her with chores such as mowing grass or vacuuming the house.

Plaintiff offered evidence that the cost of Dr. Hairfield's services, the ambulance, and the X-rays was $147.95. In addition, he missed six days' work after the accident when he was earning $140 per five-day work week. Finally, plaintiff offered into evidence the mortuary tables in G.S. 8-46 which showed plaintiff's life expectancy to be 24.96 years.

Defendant offered no evidence.

In his closing argument, plaintiff's counsel said:

Now, ladies and gentlemen, I have done a little figuring, and you can focus your attention over here just a little bit. I want to ask you to look with me for just a moment at some figuring that I have been doing. Now, ladies and gentlemen, you will recall that the evidence was that Mr. Weeks is in continuous pain. That was the evidence that he testified to. You will recall that the doctor expressed an opinion about the permanency of the injury, and his opinion was that it is a permanent injury. You will also recall that it was his opinion that the accident did cause the injury that he found when he

examined Mr. Weeks, my client, and so let's talk about this permanent, this pain and suffering a little bit. Now, according to my figures it has been 608 days since the accident occurred. Let's talk about 608 days of pain, and let's not even talk about 24 hours a day. Let's talk about maybe 15 hours a day. 608 days at 15 hours of pain a day. Now, ladies and gentlemen, you add this up. 9,120 hours is what I get.

. . . .

9,120 hours, ladies and gentlemen, 60 minutes an hour, I find that to be 367,200 minutes. Let us talk about, as far as the pain and suffering is concerned, fifty cents a minute in terms of what my client ought to receive.

. . . .

Well, let's talk about ten cents a minute, ten cents a minute from the time of the accident until now. I get that to be $36,720.00.

Defendant's prompt objection to this argument was overruled. The jury awarded plaintiff damages of $10,780.

Plaintiff's evidence tends to show that during the period of time between the accident and trial he suffered pain "almost constantly" as a result of injury caused by the accident. In light of this evidence counsel's per diem argument based on this period of time was appropriate.

This Court first addressed the per diem argument question in *Jenkins v. Harvey C. Hines Co.*, 264 N.C. 83, 141 S.E. 2d 1 (1965), but did not answer it because it concluded plaintiff's evidence of pain was insufficient to provide a "factual or legal justification" for the argument. *Id.* at 91, 141 S.E. 2d at 7.[2] The Court noted, however, that, *id.*:

---

2. The Court alluded to this portion of plaintiff's testimony, 264 N.C. at 91, 141 S.E. 2d at 7:

'Answering the question whether at the present time my hand or finger pains me, it feels like it is drawn up, or being drawn; it feels almost like it looks, tight. It doesn't interfere with my rest at night now. It doesn't give me any pain other than the feeling of being drawn. That is a discomfort.'

Yet plaintiff's per diem argument suggested that plaintiff should be compensated for *pain* at the rate of one cent per minute for the time she is awake during her life expectancy of twenty-five years.

**Weeks v. Holsclaw**

[O]ur statute, G.S. 84-14, in pertinent part, provides: 'In jury trials the whole case as well of law as of fact may be argued to the jury.' Too, under our decisions, '(c)ounsel have a wide latitude in arguing their cases to the jury, and have the right to argue every phase of the case supported by the evidence, and to argue the law as well as the facts.' 4 Strong, N.C. Index, Trial § 11, p. 298.

Disposition of this appeal in defendant's favor does not require that we accept the decision and reasoning in *Botta* [26 N.J. 82, 138 A. 2d 713 (1958) (a leading case rejecting per diem arguments)].

Our Court of Appeals has held that per diem arguments, supported by the evidence, are permissible. *Thompson v. Kyles,* 48 N.C. App. 422, 269 S.E. 2d 231, *discretionary review denied,* 301 N.C. 239, 283 S.E. 2d 135 (1980). We agree with the Court of Appeals' decision in *Thompson* and conclude that the Court of Appeals correctly applied *Thompson* to the instant case. By this opinion we wish only to give our reasons for this conclusion and to state our additional holding that when per diem arguments are used the trial court should give cautionary jury instructions.

Although we have never decided the per diem argument question, it has been much litigated and decisions[3] on it abound in other jurisdictions. They are collected in a recent annotation, "Per Diem or Similar Mathematical Basis for Fixing Damages for Pain and Suffering," 3 A.L.R. 4th 940 (1981). There is little that we can, or propose to, add to the debate. Suffice it to say that according to the annotation five approaches to the question have developed. One approach is simply that the per diem argument is appropriate. Another is that the argument is appropriate provided the trial court gives proper cautionary jury instructions. A third approach is that the per diem argument should not be used. A fourth approach is that the question should be left to the trial court's sound discretion. Finally, some courts have refused to take a general position for or against such arguments, preferring instead to make more narrow decisions based on the facts of the particular case. We are persuaded by the reasoning of those

3. The question has also produced a plethora of scholarly articles for and against such argument, many of which are collected in *Beagle v. Vasold, supra,* n. 1, 65 Cal. 2d at 174-75, 417 P. 2d at 677, 53 Cal. Rptr. at 133.

courts which conclude that the per diem argument may be used provided it is accompanied by cautionary instructions to the jury. *See, e.g., Eastern Shore Public Service Co. v. Corbett,* 227 Md. 411, 177 A. 2d 701 (1962); *Worsley v. Corcelli,* 119 R.I. 260, 377 A. 2d 215 (1977).

Our reasons for adopting this approach are these: The jury's ultimate task in answering the damages issue in a personal injury action, assuming that it has determined to award some amount of damages, is somehow to assign a monetary value to the injured party's intangible losses attributable to pain, suffering, disfigurement and disablement if there is evidence of these losses. By time-honored practice in this state, counsel for both plaintiffs and defendants are permitted in argument to suggest to the jury what this monetary value should be in a lump sum.[4] If counsel may suggest such lump sum amounts to the jury as appropriate damages, they ought to be permitted to tell the jury how they arrived at the lump sum. If they arrived at it through the use of a per diem type formula, they should be able to so advise the jury.[5]

In at least two jurisdictions which have rejected the per diem argument, New Jersey and Pennsylvania, counsel is not per-

---

4. Before our present Rules of Civil Procedure were adopted, it was the practice at trial to read the pleadings to the jury, including the *ad damnum* clause of the complaint. Note, *Trial Practice—Damages—Pain and Suffering—Per Diem Argument to the Jury,* 38 N.C. L. Rev. 289 (1960). Present North Carolina Rule of Civil Procedure 7(d) provides, "Unless otherwise ordered by the judge, pleadings shall not be read to the jury." Nevertheless, it is still the practice in this state for counsel for both sides to suggest, if they wish, lump sum amounts for the jury's consideration on the personal injury damage issue. Our trial judges, for example, ordinarily instruct juries on this issue as follows:

> I instruct you that if you reach this issue, you are not to be governed by the amount of damages suggested by the parties or their attorneys, but you are to be governed exclusively by the evidence in the case and the rules of law I have given you with respect to the measure of damages.

N.C.P.I.—Civil 810.50.

5. We recognize that when he was Chief Justice of the California Supreme Court, the Hon. Roger Traynor argued that although counsel should be permitted to suggest a lump sum to the jury, it does not follow that they ought to be able to use the per diem approach in arriving at this sum, *Beagle v. Vasold, supra,* n. 1, 65 Cal. 2d at 183-84, 417 P. 2d at 683, 53 Cal. Rptr. at 139 (Traynor, C.J., concurring). We have the greatest respect for the judicial acumen of then Chief Justice Traynor, but having examined his argument on the point in question, we are simply not persuaded by it.

mitted to suggest a lump sum amount to the jury. The leading New Jersey decision rejecting per diem arguments, *Botta v. Brunner*, 26 N.J. 82, 138 A. 2d 713 (1958), recognized that the decision "conflicts to some degree" with earlier New Jersey cases holding that counsel could advise the jury with regard to the amount in the *ad damnum* clause of the complaint and could otherwise suggest a lump sum figure. The Court in *Botta* expressly overruled these prior decisions. *Id.* at 103-04, 138 A. 2d at 725. In Pennsylvania, which prohibited the per diem argument in *Ruby v. Casello*, 204 Pa. Super. 9, 201 A. 2d 219 (1964), the Court had earlier "steadfastly refused to allow counsel to disclose the amount claimed or expected when damages are unliquidated." Note, *supra*, 38 N.C. L. Rev. at 291, n. 7 (citing *Stassun v. Chapin*, 324 Pa. 125, 188 A. 111 (1936)). To argue that certain intangible losses should be compensated by using a monetary amount per unit of time is simply another way of arguing that they should be compensated by a lump sum amount for the entire period of time, *i.e.*, the sum of the units of time, during which they persisted.

Neither do we believe that juries will be unduly swayed by such arguments or that the arguments will lead to excessively high verdicts. We can think of no reason why a jury is more likely to adopt counsel's assessment of what is a proper amount per unit of time than it is to adopt counsel's assessment of what is a proper lump sum amount for the entire period of time involved. In the instant case the jury, as was its prerogative, rejected the view of plaintiff's counsel of the amount of damages it should assess per unit of time and came in with a verdict much smaller than counsel had suggested. It is likely that juries approach the assessment of damages for intangible losses by considering both the intensity and extent of the losses and their duration. In effect, consciously or subconsciously, juries probably assign some value to some unit of time during which the losses persisted in arriving at their ultimate answer to the damages issue, whether or not such an approach is suggested to them by counsel.

Finally, there are safeguards against excessively high verdicts. First, the trial court may allow, with the consent of the plaintiff, a remittitur. *Bethea v. Town of Kenly*, 261 N.C. 730, 136 S.E. 2d 38 (1964); *Lazenby v. Godwin*, 40 N.C. App. 487, 253 S.E. 2d 489 (1979); *Redevelopment Commission of City of Durham v. Holman*, 30 N.C. App. 395, 226 S.E. 2d 848, *discretionary review*

*denied,* 290 N.C. 778, 229 S.E. 2d 33 (1976). If plaintiff does not consent to a remittitur, the trial court has broad discretion to set aside the verdict and order a new trial. *See Worthington v. Bynum,* 305 N.C. 478, 290 S.E. 2d 599 (1982). Third, by our holding today the trial court, if a per diem argument is used, must instruct the jury in a manner similar to the instructions with regard to counsels' lump sum suggestions. The trial judge should tell the jury that they are not to be governed by the amount of damages suggested by counsel for whatever unit of time counsel employed, that this argument does not constitute evidence but is merely an approach to the damages issue which the jury may consider but need not adopt, and that the jury's ultimate obligation is to arrive at a lump sum amount which, in its view, is supported by the evidence and is fair and just to both the plaintiff and the defendant.

On all other questions presented we agree with the Court of Appeals' disposition and reasoning and deem it unnecessary to address them further. The decision of the Court of Appeals is, therefore

Affirmed.

Justice MARTIN took no part in the consideration or decision of this case.

Justice MEYER dissenting.

The majority properly points out the potential problems inherent in allowing a per diem argument: the danger of excessively high verdicts necessitating new trials, jury abuse of the per diem figure as evidence of value of the pain and suffering, and a more frequent need to consider remittitur. In short, by our decision today we merely further complicate an area of the law which need not be further complicated. Yet, for this additional burden to be placed on our courts, the majority offers no affirmative benefit of allowing the per diem argument but simply attempts to refute the standard arguments against it.

The fixing of monetary damages for pain and suffering is within the exclusive province of the jury. To suggest that a figure for just compensation can be fixed with mathematical certainty is,

to say the least, misleading. Typically, there is no evidentiary basis whatsoever for a mathematical formula. Certainly no witness is qualified to testify that the injured party's pain and suffering is worth a sum certain in dollars and cents per hour or minute.

While it is possible that the per diem argument may lead to an excessive verdict, I do not fear that so much as I do the probability that the jury will, in spite of cautionary instructions, be led to believe that the mathematical formula is itself some evidence of the value of the pain and suffering. This possibility is recognized by the majority as evidenced by its suggested cautionary instruction that the per diem "argument does not constitute evidence."

If the jury's ultimate obligation is to arrive at a *lump sum amount* which, in its view, is *supported by the evidence* (emphasis supplied), and if the per diem argument does not constitute evidence, then the per diem argument serves no legitimate purpose. Although decidedly advantageous to the injured plaintiff, it is an unnecessary advantage and one which does not outweigh the potential abuse and concomitant costs in time and dollars to our courts and the respective litigants. I would vote to reverse the Court of Appeals.