[Civ. No. 17361. Second Dist., Div. One. July 14, 1950.]

KATHRYN F. JAYNES, Appellant, v. OLIVER B. JAYNES, Respondent.

Gustafson & Rosenmund and Roy A. Gustafson for Appellant.

Wright & Garrett, Harold F. Collins, Walter L. M. Lorimer and David M. Harney for Respondent.

WHITE, P. J.—Plaintiff appeals from an adverse judgment entered upon the verdict of a jury. An appeal from an order of nonsuit in favor of defendant Frankie Dale Jaynes has been abandoned. This appeal concerns only the first cause of action of plaintiff's complaint, wherein it was alleged that plaintiff, a 69-year-old woman inexperienced in business affairs, was induced by defendant, the brother of her deceased husband, to sell to defendant and his wife her shares in a family corporation which was engaged in the newspaper publishing business; that the inducement was by way of false representation as to who held control of the corporation and as to the value of the stock; that there was a confidential relationship between the parties and that plaintiff received only $22,000 for shares worth $55,000.

Appellant contends that the court erred in sustaining objections to certain testimony and in the giving and refusing of certain instructions. While recognizing that by the verdict all conflicts in the evidence were resolved against her, appellant urges that had proper instructions been given, it is likely that an opposite verdict would have been reached, and that therefore this court, if it finds error, is "required to examine the entire cause, including the evidence, and decide whether . . . the errors have resulted in a miscarriage of justice." (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 447 [159 P.2d 958].)

With respect to the relationship of trust and confidence between plaintiff and her brother-in-law, it was alleged that defendant and plaintiff's husband had been associated in the newspaper business; that after the death of her husband in 1920 defendant continued to operate the business for the

benefit of himself and plaintiff until 1927; that "on many occasions between the time of the death of plaintiff's husband and October 1, 1944, defendant represented that he was interested in watching after and protecting all of plaintiff's business interests," and that from 1920 to 1944, defendant was "in constant communication with plaintiff and advised plaintiff in all of her business affairs"; that by virtue of these relations plaintiff placed confidence and trust in defendant and relied upon him, and that this was known to defendant. It was further alleged that from 1928 to 1932 plaintiff and defendant were partners in the publication of a newspaper; that the business was incorporated in 1932 as "Northeast Los Angeles Publishing Co.," the stock being held as follows: "Defendant Oliver B. Jaynes, 1 share; defendant Frankie Dale Jaynes (wife of Oliver), 1 share; plaintiff, 348 shares (of which 175 shares were owned beneficially by plaintiff and 173 shares were held by plaintiff on an oral trust for defendants)." Further, it was alleged, that "at all times since the creation of said corporation defendants acted as general managers thereof and exercised full and complete control over its business and policies and at no time did plaintiff exercise any judgment or control with respect to the operation or conduct of said corporation. Plaintiff had no information respecting the operation of said corporation other than such as was furnished her by defendants."

The false representations alleged to have been made on or about August 1, 1944, were as follows:

"1. That the net worth of said Northeast Los Angeles Publishing Co. was not in excess of $37,000.00.

"2. That plaintiff was the owner of 174½ shares of said corporation and that defendants were the owners of 175½ shares of said corporation.

"3. That plaintiff's shares in said corporation were not worth in excess of $22,000.00.

"4. That if plaintiff did not sell her said shares to defendant Oliver B. Jaynes, defendants would sell their shares to a third party who would have controlling interest in said corporation.

"5. That if plaintiff did sell her shares to defendant Oliver B. Jaynes, defendants would, in the event of the sale of the newspaper 'Highland Park News-Herald' prior to paying to plaintiff the purchase price of her shares, pay to plaintiff one-

half of the sales price obtained by defendants for said newspaper, less the amount theretofore paid by defendants to plaintiff for said shares.''

The representations were alleged to be false, in that the net worth of the corporation was approximately $110,000; plaintiff was in fact legal and beneficial owner of 175 shares and the defendants of 175 shares; that plaintiff's shares were worth approximately $55,000; defendants could not transfer a controlling interest as they owned only one-half the shares; defendants had no intention of paying plaintiff any additional sum in the event of a sale.

The sale to defendant took place in September, 1944. In April, 1947, defendant sold the newspaper for $145,000. There was substantial conflicting evidence on the issues of the net worth of the business in 1944, as to whether the representations were made, and whether plaintiff relied thereon.

 Appellant assigns error by the court in modifying instruction number 28, requested by her. The instruction (with the language deleted by the court inclosed in parentheses and the language added by the court shown in italics) is as follows:

''(Some issues in this case turn on whether there was a confidential or fiduciary relation between the plaintiff Kathryn F. Jaynes and the defendant Oliver B. Jaynes at the time of the sale and during the negotiations preceding the sale.

''A fiduciary relation in law is ordinarily synonymous with a confidential relation. Such a relation exists where a confidence is reposed by one person in the integrity of another and the other person accepts or assumes to accept that confidence.)

''*However*, in determining whether there is a confidential relation, you are entitled to consider the family connections of the parties, their past associations, their social relationship, their respective knowledge and information, their occupations, their respective experience in business affairs and their relative ages and health.

''Where the purchaser of *corporate* stock is an officer or director of (a) *the* corporation and has knowledge of special facts affecting the value of its stock, *which are not equally available to the stockholder,* he is in a confidential relation to the stockholder and is under a duty to disclose such facts before making a purchase of the stock.''

We agree with appellant that the addition of the words ''which are not equally available to the stockholder,'' was

error. "Under the 'special facts' doctrine a corporate officer owes a limited fiduciary duty in transactions with a shareholder involving the transfer of stock. The confidential relationship arises as a result of the officer's possession of special knowledge gained in his capacity as a corporate fiduciary. An officer, in buying or selling to a shareholder, must inform him of those matters relating to the corporate business of which the officer has knowledge and which the shareholder has a right to know about, so that the latter may have the benefit of such information in judging the advantages of the deal." (*Hobart* v. *Hobart Estate Co., supra,* p. 433.)

Under the particular circumstances of this case, we would be constrained to hold that the claimed erroneous language in the foregoing instruction did not constitute prejudicial error, since it could be assumed that the jury did not rely upon the erroneous language of the instruction. But when the foregoing instruction, as given, is scrutinized in conjunction with all the instructions given on the main issues of misrepresentation, concealment, confidential relationship, reliance and independent investigation, we are forced to conclude that the interests of justice require a reversal of the judgment. ▮ While in determining whether a verdict is supported by the evidence, we must assume that the jury accepted the view most favorable to respondent, nevertheless, in considering erroneous instructions, "we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party" (*O'Meara* v. *Swortfiguer,* 191 Cal. 12, 15 [214 P. 975]). As was said in *Oettinger* v. *Stewart,* 24 Cal.2d 133, 140 [148 P.2d 19, 156 A.L.R. 1221], "In cases where it clearly appears that the jury did not rely upon the erroneous instructions, the judgment may be affirmed on the ground that the error is not prejudicial. This, however, is not such a case . . ., and we should not speculate upon the basis of the verdict."

▮ It was claimed that defendant, by reason of his active management of the business, had knowledge of the phenomenal increase in profits in 1944 and that plaintiff did not. The evidence was in conflict. There was evidence that "irregularities" in the keeping of the books concealed the true net profits of the corporation. By the instruction as modified, the jury could well have understood that despite the existence of the

confidential relation, plaintiff was under a duty to investigate and could not recover if she had the means of ascertaining the true state of affairs. As pointed out in appellant's brief, "In the ordinary situation where the only liability is for active false statement, there is no duty to investigate, that is, the mere existence of an opportunity to investigate, or of sources of information, will not preclude the plaintiff from relying upon the representations. . . . (Citations.) . . . If deliberate silence is also a ground for relief where a corporation officer has 'special facts,' there is even greater reason for the absence of any duty on the plaintiff to investigate. The plaintiff is not even aware of what he or she *should* investigate when the defendant has not revealed the facts. Yet under the trial court's instruction the defendant's silence is excused if the facts are *available* to plaintiff." (Emphasis added.)

In *Taylor* v. *Wright,* 69 Cal.App.2d 371 [159 P.2d 980], a case involving the purchase of stock by officers who did not disclose their identity, the contention was made that information as to the value of certain assets was available to the stockholder. The court there said: "Appellants also point out that the books of the company disclosed the information as to ownership of the Shell Union stock, and that such books were located at the Oakland office. Any stockholder could have come to the office and ascertained the true facts for themselves. To state the point is to refute it. Such argument loses sight of the realities of the situation. A stockholder is not bound to anticipate fraud on the part of his trusted director. The legal right to look at the books, in view of the complexity of modern accounting practices, cannot preclude a stockholder from recovering from a fraudulent director."

The error in the foregoing instruction was magnified by the instructions following (Nos. 29 requested by the defendant, and 31 given by the court):

"A mere representation by the defendant, if any there was that the newspaper corporation was worth less than its actual value, will not warrant a recovery by plaintiff, if you find that the plaintiff had a full and complete opportunity to inform herself *or* that she or her agents had investigated the value of said property, *and* that no confidential relationship existed which would excuse the plaintiff's reliance on the representations of the defendant, unless the plaintiff was induced by trick, undue influence, or other misrepresentations of the defendants not to make such investigation."

"If it is shown that the defendant had a superior knowledge of the value of the property in question, *and* that such a confidential relationship existed between him and the plaintiff as would justify a reasonably prudent person in her position in relying upon his representations with respect thereto, then plaintiff is under no duty to make an independent investigation, and if she made none, she was justified in relying on such representations by the defendant.''

The jury was told, in effect, by the last-mentioned instruction that plaintiff was not excused from making investigation unless there existed not only superior knowledge on the part of defendant, but also a confidential relation. The correct rule is that either factor, superior knowledge or confidential relation, is sufficient. The rule is stated in *Seeger* v. *Odell,* 18 Cal.2d 409, 415 [115 P.2d 977, 136 A.L.R. 1291], as follows: "He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts, unless the person expressing the opinion purports to have expert knowledge concerning the matter *or* occupies a position of confidence and trust." (Emphasis added.)

So here, even had the jury concluded that the parties were dealing at arms' length, it could have believed that plaintiff was justified in relying upon representations of value, expressed as an opinion (not honestly entertained) by the man who was experienced in newspaper work, had been the active manager of the business for many years, and who had listed the property with a broker. Or on the other hand, it could have believed that although the defendant refrained from active misrepresentation, or that the plaintiff did not rely upon his views as to value, nevertheless the defendant, by remaining silent as to the special facts showing the increased prosperity of the corporation known to him by virtue of his position as the active director, breached his fiduciary duty to plaintiff, a stockholder unfamiliar with business affairs.

■ Although recognizing that the principles of law applying in fraud cases vary according to whether or not there is a confidential relation, and that the question of the existence of a confidential relation was present in this case, nowhere did the court give the jury a definition of the term. In view of the fact that the existence or nonexistence of a confidential relation was an issue upon which the triers of fact were to find, such a definition should have been given, for there is no justification for the assumption that the jurors understood the meaning of such a term without definition.

Although appellant proffered a definition of the term, the instruction in which it was contained was modified by the trial court deleting the following: "A fiduciary relation in law is ordinarily synonymous with a confidential relation. Such a relation exists where confidence is reposed by one person in the integrity of another and the other person accepts or assumes to accept that confidence." Several times the court advised the jury as to what they might consider in determining whether a confidential relation existed, but nowhere do we find a definition of the term.

Coming now to a consideration of whether the aforesaid errors have resulted in a miscarriage of justice, a most difficult and perplexing task is oftentimes presented, but the present case was a close one on the issues hereinbefore discussed, and the evidence, or the inferences to be drawn, were sharply conflicting. This is particularly true on the issues of confidential relation, reliance and concealment. We are impressed that the erroneous instructions or failure to give certain requested instructions hereinbefore discussed, leave no escape from the conclusion that the errors were prejudicial.

Other contentions advanced as to rulings on the admissibility of evidence do not demand our consideration. Suffice it to say we find no error therein.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 1, 1950, and respondent's petition for a hearing by the Supreme Court was denied September 11, 1950. Schauer, J., voted for a hearing.