GLENN A. LAZENBY, JR. AND JEAN G. LAZENBY v. DERWOOD H. GODWIN

No. 7814SC358

(Filed 3 April 1979)

1. **Fiduciaries § 1; Corporations § 13— acquisition by director of shareholder's stock—fiduciary duty under special circumstances**

Under special circumstances, a director of a corporation stands in a fiduciary relationship to a shareholder or director in the acquisition of the shareholder's stock.

2. **Fiduciaries § 2; Corporations § 13— fiduciary duty of director to shareholders —sufficiency of evidence**

Plaintiffs presented evidence of special circumstances which, if found by the jury to be true, would create a fiduciary duty owed by defendant corporation director to plaintiff shareholders where plaintiffs' evidence tended to show that the corporation in question was a closely held corporation with shares not sold on the open market; the shares of the corporation were owned by the children of a deceased man and their spouses; defendant had managed the corporation since its inception in the 1950's; although plaintiffs were technically codirectors of the corporation, they did not take part in the management of the corporation; and plaintiffs placed their trust in the business skills and judgment of defendant because plaintiffs had less experience than defendant in corporate affairs.

**3. Corporations § 13— fiduciary duty of director to codirectors—no equal access to necessary information**

Though the general rule is that a director owes no fiduciary duty to a codirector in regard to the sale or acquisition of stock, a duty to disclose does exist where the parties do not have equal access to the necessary information; evidence presented by plaintiffs in this case that defendant did not disclose to plaintiffs that another corporation was negotiating with defendant to purchase the corporate assets for a large sum, that defendant had requested the persons with whom he was negotiating to refrain from informing the other shareholders of the impending sale, that an inspection of the books would not have revealed that a sale of the corporate assets was being negotiated, and that plaintiffs did not take an active part in the management of the corporation and that there were no regular directors' meetings was sufficient evidence to establish that plaintiffs did not have equal access to the information, and defendant was therefore under a duty to disclose that the other corporation had made an offer to purchase the corporate assets.

**4. Fiduciaries § 2; Corporations § 13— director's duty to shareholders—termination of duty—question of fact**

Defendant's statement made during an informal shareholders' meeting that he wanted to purchase the shareholders' stock for as little as possible was a factor to be taken into consideration by the jury in determining whether or not the fiduciary relationship continued until the date of the sale of the stock, but it was not conclusive on that issue.

APPEAL by defendant from *Lee, Judge.* Judgment and Order for New Trial entered 15 August 1977 in Superior Court, DURHAM County. Heard in the Court of Appeals 30 January 1979.

On 11 April 1974, plaintiffs filed a complaint alleging that the defendant had committed actual and constructive fraud in purchasing the plaintiffs' stock in the Fayetteville Wholesale Building Supply, Inc., without disclosing that there was an impending sale of the corporate assets which greatly increased the value of plaintiffs' stock. Defendant was the president and manager of the corporation as well as the majority stockholder.

Defendant answered denying any fraud on his part, and alleged that the plaintiffs had ratified and approved the sale of their stock to the defendant after becoming fully informed of the sale of the corporate assets.

The evidence tends to show that Fayetteville Wholesale Building Supply, Inc., was a closely held family corporation. In September 1972, the stock in the corporation was owned as follows:

| | |
|---|---|
| Defendant, Derwood H. Godwin: | 42.05% |
| Larry Godwin: | 12.04% |
| Margaret Godwin Caviness: | 11.3% |
| Linda Godwin Furr: | 11.3% |
| Plaintiff, Jean G. Lazenby: | 11.3% |
| Plaintiff, Glenn Lazenby: | 9.86% |
| O. W. Godwin Estate: | 2.15% |

The stockholders listed above are the children of O. W. Godwin, deceased, except for plaintiff Glenn Lazenby, who is the husband of the deceased's daughter.

In December 1972, defendant began negotiating with Larry Godwin for the purchase of his stock. On 7 February 1973, defendant purchased the shares of Larry Godwin and thereby obtained a majority interest in the corporation. In February 1973, the defendant mailed a letter to plaintiffs informing them of the defendant's control of the corporation. In the letter, defendant stated that "[i]f something were to happen to me . . . you could wind up with nothing," and "if you would like to sell, let me know. . . ."

On 11 March 1973, an informal shareholders' meeting was held. At that meeting, defendant informed the other shareholders that he was in ill health and would be interested in purchasing their stock. Defendant offered to purchase the shares at less than book value. Defendant also stated that a sale of the corporate assets was not possible. The defendant then offered each shareholder $60,000 for his interest in the corporation. Linda Furr refused, and defendant informed the others that he would purchase all or none of the shares. On 13 March 1973, the plaintiffs reconsidered defendant's offer. Plaintiffs telephoned the defendant, who agreed to purchase plaintiffs' shares for $120,000. On 16 March 1973, defendant executed a note for $120,000 for plaintiffs' stock. Margaret Godwin Caviness also sold her shares to defendant for $60,000. On 26 March 1973, Linda Furr was notified by Ervin Baer, attorney for the corporation, that the corporate assets were to be sold to Valley Forge Corporation for $2,600,000, and she consented to the sale. The next day, Linda Furr informed plaintiffs of the impending sale. Plaintiffs thereupon contacted Baer, who informed plaintiffs that the plaintiffs would not have received any more money if they had retained their stock until the sale of the corporation to Valley Forge. On 28 March, the as-

sets of the corporation were sold to Valley Forge Corporation. On 10 December 1973, plaintiffs accepted partial payment on the note from defendant. On 1 January 1974, the plaintiffs discovered that they would have received about $1,200 per share, or approximately $300,000, if they had retained the stock until the sale to Valley Forge.

Plaintiffs' evidence also tended to show that the defendant did not inform the plaintiffs that in December 1972, defendant was approached in regard to a sale of the corporate assets to Valley Forge Corporation and that in early January 1973 he met with the President of Valley Forge Corporation in Houston, Texas, to discuss the sale. During the last week in January 1973, an auditor from Valley Forge visited Fayetteville Wholesale Building Supply, Inc., and in February the defendant was informed that Valley Forge would be making an offer to purchase. On 4 March 1973, a written offer to purchase the corporation for $2,543,000 was submitted, and the defendant counteroffered for sale at $2,600,000 on 12 March 1973, which was incorporated in the final contract. The corporation was to receive a net of about $1,800,000. The sale was finalized on 28 March 1973.

Defendant's evidence tended to show that he did not inform the other shareholders of the impending sale at the shareholders' meeting on 11 March because he had not received a firm offer. In January 1974, after plaintiffs learned of the sale of the assets, defendant offered to sell back the shares to plaintiffs and also tendered the balance on the $120,000. Plaintiffs refused to accept the stock or the tender.

At the close of the evidence, defendant moved for a directed verdict. The court denied defendant's motion. Five issues were submitted to and answered by the jury as follows:

"1. At the time of the sale of the 236 shares of stock of Fayetteville Wholesale by the plaintiffs to the defendant on March 16, 1973, did a relationship of trust and confidence exist between the plaintiffs and the defendant?

ANSWER: Yes.

2. If so, was the sale of stock on that date an open, fair, and honest transaction?

ANSWER: No.

3. Did the defendant, by actual fraud and deceit, obtain the 236 shares of stock of Fayetteville Wholesale from the plaintiffs on March 16, 1973?

ANSWER: No.

4. Did the plaintiffs affirm and ratify the sale of stock as alleged in the answer?

ANSWER: No.

5. In what amount, if any, are the plaintiffs entitled to recover of the defendant for:
(a) Principal      10,000.00?
(b) Interest           0     ?"

The plaintiffs moved for a partial new trial on the issue of damages, pursuant to G.S. 1A-1, Rule 59, on the grounds that the verdict as to damages was inadequate and against the weight of the evidence, and was rendered in disregard of the instructions by the court. The defendant tendered a judgment providing for an additur of $87,123.42, bringing the damages to a total of $97,123.42.

On 15 August 1977, the court set aside the jury verdict and ordered a new trial on all the issues raised by the pleadings. From this judgment and order, defendant appeals.

*Murdock & Jarvis by Jerry L. Jarvis for plaintiff appellees.*

*Poyner, Geraghty, Hartsfield & Townsend by David W. Long and Cecil W. Harrison, Jr.; William A. Johnson; and James B. Maxwell for defendant appellant.*

CLARK, Judge.

Defendant first assigns as error the trial court's denial of defendant's motion for directed verdict on the issue of constructive fraud. Defendant contends that a recovery for constructive fraud is predicated on a breach of a fiduciary duty, 6 Strong's N.C. Index 3d, Fraud, § 7, and that under North Carolina law, a manager and director of a corporation does not stand in a fiduciary relationship to shareholders in regard to the acquisition of the shareholders' stock. Therefore, defendant contends, he had no duty to disclose any information relating to the value of the stock or to disclose the impending sale of the corporate assets.

---

Lazenby v. Godwin

---

The threshold inquiry, then, is whether or not, under North Carolina law, a director of a corporation stands in a fiduciary relation to a shareholder in a corporation in the acquisition of the shareholders' stock. The North Carolina courts have not directly addressed this issue. *See,* R. Robinson, North Carolina Corporation Law and Practice, § 12-14 (Supp. 1977).

Three different views on this issue are recognized in other jurisdictions. *See,* Annot., 7 A.L.R. 3d 501 (1966); 19 Am. Jur. 2d, Corporations, § 1328. The majority view provides that a director of a corporation does not stand in a fiduciary relationship to a shareholder as to the acquisition of stock, and therefore has no duty to disclose inside information. *See,* Annot., 7 A.L.R. 3d 501, § 3; Annot., 132 A.L.R. 261, § II (1941); 19 Am. Jur. 2d, Corporations, § 1328. The minority view provides that because of his position as a director in the corporation, a director is under a duty to disclose all material information regarding the purchase or sale of stock. *See,* Annot., 7 A.L.R. 3d 501, § 5 (Supp. 1978); Fletcher, 3A Cyc. Corp., § 1168.2 (Perm. Ed. 1975).

The third view is that, although a director or manager of a corporation ordinarily owes no fiduciary duty to shareholders when acquiring their stock, under "special circumstances" a fiduciary relationship arises. Annot., 7 A.L.R. 3d 501, § 4, Annot., 132 A.L.R. 261, § III; Lake, *The Use for Personal Profit of Knowledge Gained While a Director,* 9 Miss. L.J. 427 (1936). The special circumstances include, for example, the fact that the corporation is closely held and its shares are unlisted (*Saville v. Sweet,* 234 App. Div. 236, 254 N.Y.S. 768 (1932), *aff'd* 262 N.Y. 567, 188 N.E. 67 (1933)); the familial relationship of the parties (*see, Link v. Link,* 278 N.C. 181, 179 S.E. 2d 697 (1971)); the forthcoming sale of corporate assets (*Wood v. MacLean Drug Co.,* 266 Ill. App. 5 (1932)); the fact that the director initiates the sale (*see, Goodwin v. Agassiz,* 283 Mass. 358, 186 N.E. 659 (1933)); and the relative ages and experience in financial affairs of the director and shareholder (*see, Jaynes v. Jaynes,* 98 Cal. App. 2d 447, 220 P. 2d 598 (1950)).

Although, the North Carolina courts have not expressly adopted any view as to the existence of a fiduciary relationship between a director of a corporation to a shareholder in acquiring stock, there are three pertinent North Carolina cases.

In *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896 (1931), the plaintiff was a shareholder in a corporation and the defendant was a manager of the corporation. The defendant agreed to negotiate a sale of plaintiff's stock to a second corporation. The defendant sold plaintiff's stock, misrepresented the sale price to plaintiff and retained the excess funds for his own use. The court held that a fidiciary relationship existed between the defendant and plaintiff, but refused to specify whether the fiduciary duty arose on a principal-agent theory or some other basis. The court held that it was unnecessary to determine whether a fiduciary relationship arose merely because the defendant was a director and plaintiff a shareholder in the corporation. The court stated that "[t]he relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* at 598, 160 S.E. at 906.

In *Link v. Link, supra*, the plaintiff-wife transferred corporate debentures and stock to her husband, the defendant, in a separation agreement. The defendant was a manager and director of the corporation. Plaintiff brought suit alleging that defendant had fraudulently concealed the value of the stock. The court noted the decision in *Abbitt* and stated that "[w]hen, as here, there are added the further circumstances that the transferor is the wife of the transferee, she is inexperienced in business affairs and is laboring under great emotional strain, the stock is unlisted, is closely held within the family of the transferee and has never paid dividends, the duty of disclosure is clear." *Id.* at 193, 179 S.E. 2d at 704.

In *Ragsdale v. Kennedy*, 22 N.C. App. 509, 207 S.E. 2d 301, *reversed* 286 N.C. 130, 209 S.E. 2d 494 (1974), this court considered whether or not a manager of a corporation had a duty to codirectors to disclose information regarding the financial condition of the corporation when selling stock. In a divided opinion, this court held that "a president-manager of a corporation does not stand in a fiduciary relationship to his directors merely by virtue of his position as such president-manager; and, absent a showing of special circumstances creating a fiduciary relation between the parties, or absent a showing of active fraud, such president-manager may sell his stock to his directors, and fraud

or unfair dealing will not be inferred." *Id.* at 516, 207 S.E. 2d at 306. The court held that the defendants had not alleged any special circumstances. Judge Baley, in a dissenting opinion, indicated that a fiduciary relationship existed. On appeal, the Supreme Court reversed, noting that the evidence tended to show that the plaintiff, the manager of the corporation, was aware that the corporation was in dire financial straits and had informed the defendants that the corporation was a "gold mine." The court held that once a vendor assumes to speak, he is then under a duty to make a full and fair disclosure. The Supreme Court did not specifically address the issue of constructive fraud.

[1]  In light of the language of the North Carolina Supreme Court in *Link*, it is our opinion that, under special circumstances, a director of a corporation stands in a fiduciary relationship to a shareholder or director in the acquisition of the shareholder's stock.

[2]  We therefore must consider whether plaintiffs presented evidence of special circumstances, which if found by the jury to be true, would create a fiduciary duty owed by defendant to the plaintiffs. The evidence presented by the plaintiffs tends to show that the Fayetteville Wholesale Building Supply, Inc., was a closely held corporation with shares not sold on the open market. The shares in the corporation were owned by the children of O. W. Godwin and their spouses. The defendant had managed the corporation since its inception in the 1950's.

Although the plaintiffs were technically codirectors of the corporation, they did not take part in the management of the corporation. They placed their trust in the business skills and judgment of the defendant because the plaintiffs had less experience than defendant in corporate affairs. The defendant initiated the sale by sending a letter to plaintiffs informing them that he was in ill-health and advising them to consider selling their interest.

Plaintiffs have presented sufficient evidence of special circumstances, which if found by the jury to be true, would create a fiduciary relationship between defendant and plaintiffs. "Where a transferee of property stands in a confidential or fiduciary relationship to the transferor, it is the duty of the transferee . . . to disclose to the transferor all material facts relating thereto and his failure to do so constitutes fraud." *Link v. Link, supra*, at 192,

179 S.E. 2d at 704. *See, Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202 (1951).

[3]   We note that in the case *sub judice*, the plaintiffs, in addition to being shareholders, were codirectors of the corporation. The general rule is that a director owes no fiduciary duty to a codirector in regard to the sale or acquisition of stock. Annot., 84 A.L.R. 615, § IV (1933). *See, Hallidie v. First Federal Trust Co.,* 177 Cal. 600, 171 P. 431 (1918). The basis of this rule is that codirectors ordinarily have equal means of knowledge of the corporation's finances. *Perry v. Pearson,* 135 Ill. 218, 25 N.E. 636 (1890); *Boulden v. Stilwell,* 100 Md. 543, 60 A. 609 (1905). But where the parties do not have equal access to the necessary information, a duty to disclose exists. *Morrison v. Snow,* 26 Utah 247, 72 P. 924 (1903); *George v. Ford,* 36 App. D.C. 315 (1911); Annot., 84 A.L.R. 615, § IV. In the case *sub judice*, the defendant did not disclose to the plaintiffs that Valley Forge Corporation was negotiating with defendant to purchase the corporate assets for $2,600,000. The evidence tends to show that defendant had requested the persons with whom he was negotiating to refrain from informing the other shareholders of the impending sale. An inspection of the books would not have revealed that a sale of the corporate assets was being negotiated. In addition, although the plaintiffs were nominally codirectors of the corporation, the evidence tends to show that they did not take an active part in the management of the corporation and that there were no regular directors' meetings. There is sufficient evidence presented to establish that plaintiffs did not have equal access to the information and therefore, the defendant was under a duty to disclose that the Valley Forge Corporation had made an offer to purchase the corporate assets.

[4]   Defendant, however, contends that the defendant's statement during the 11 March 1973 meeting that he wanted to purchase the stock for as little as possible, terminated the fiduciary relationship. This is a factor to be taken into consideration by the jury in determining whether or not the fiduciary relationship continued until the date of the sale of the stock, but it is not conclusive on that issue. The court did not err in denying defendant's motion for a directed verdict on the issue of constructive fraud.

Defendant also assigns as error the trial court's refusal to sign the Judgment and Additur submitted by defendant.

A ruling on a motion for additur or remittur is within the discretion of trial judge. *Caudle v. Swanson*, 248 N.C. 249, 103 S.E. 2d 357 (1958). The judge, however, may not merely reduce or increase the award without the consent of the affected parties. *Bethea v. Kenly*, 261 N.C. 730, 136 S.E. 2d 38 (1964); Shuford, North Carolina Civil Practice and Procedure, § 59-9 (1975). There is nothing in the record before us which indicates that the trial court abused its discretion in denying defendant's additur, and therefore defendant's contention is without merit.

Plaintiffs cross-assign as error the trial court's denial of plaintiffs' motion to limit the new trial to the issue of damages. "A motion in this regard is directed to the sound discretion of the trial judge . . . ." *Setzer v. Dunlap*, 23 N.C. App. 362, 363, 208 S.E. 2d 710, 711 (1974). The appellate courts will not supervise the lower court's judgment except in "extreme circumstances." *Id.*; *see, Godwin v. Vinson*, 254 N.C. 582, 119 S.E. 2d 616 (1961). It is not an abuse of discretion to require a new trial on all issues, even though the error giving rise to a new trial occurred in only one issue. *See, Lumber Co. v. Branch*, 158 N.C. 251, 73 S.E. 164 (1911). The trial court did not abuse its discretion in ordering a new trial on all issues.

Affirmed.

Judges VAUGHN and HEDRICK concur.