McFee v. Presley, 2022 NCBC 33.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18665

JACQUELINE S. MCFEE and
SAVAGE MCFEE, INC.,

        Plaintiffs,

v.

WILLIAM C. PRESLEY; BILL T.
STACKS; SABR LEME, INC.; C.
PRESLEY PROPERTIES, LLC;
STACKS HOLDING, INC.; and CPP
INTERNATIONAL, LLC,

        Defendants.

**ORDER AND OPINION ON
WILLIAM C. PRESLEY AND C.
PRESLEY PROPERTIES, LLC'S
MOTION TO DISMISS**

1. Jacqueline McFee is a former member and employee of CPP International, LLC ("CPP"). This is the latest in a string of lawsuits against CPP and others designed to reclaim and enforce her rights to intellectual property that she created while working for the company. In relevant part, McFee alleges that her colleague, William Presley, defrauded her out of her membership interest and unfairly exploited her intellectual property. Presley, together with a related entity called C. Presley Properties, LLC, has moved to dismiss the complaint under North Carolina Rule of Civil Procedure 12(b)(6). (*See* ECF No. 22.) For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

> *Terpening Law PLLC, by William R. Terpening, Tomi M. Suzuki, and Shaefer A. Shepard, for Plaintiffs Jacqueline S. McFee and Savage McFee, Inc.*
>
> *Johnston, Allison & Hord, P.A., by Kimberly J. Kirk and Katie D.B. Burchette, for Defendants William C. Presley and C. Presley Properties, LLC.*

*No counsel appeared for Defendants Bill T. Stacks, Sabr Leme, Inc., Stacks Holding, Inc., and CPP International, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

2. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the complaint are true and also draws from documents referred to in the complaint.

3. McFee is an artist and designer by trade. She met Presley long ago, worked with him for a year or two, and stayed friendly afterward. When Presley bought an interest in CPP and became its president in 1998, he convinced McFee to join him there, at first in a part-time role and later as full-time lead designer. (*See* Compl. ¶¶ 14–21, ECF No. 3.)

4. McFee alleges that her hiring was a turning point for CPP. Until that time, the company had made and sold only basic office supplies. McFee organized a creative department and introduced a raft of new products based on her unique designs. These products enjoyed immediate success. So did CPP, whose value quadrupled. (*See* Compl. ¶¶ 22–24, 26, 29.)

5. In 2008, CPP rewarded McFee with membership rights and a ten percent ownership interest.[1] Around the same time, McFee signed a written employment

---

[1] The complaint does not expressly say who CPP's members were during the relevant period. It appears that McFee and Presley held their membership interests through related entities rather than in their own names. In their briefs, though, both sides ignore the use of related entities and refer to McFee and Presley as members of CPP. For simplicity, the Court does so as well. For the same reason, the Court refers to McFee and her coplaintiff Savage McFee,

agreement, which promised her quarterly royalties for products based on her designs as well as the right to verify the royalty amount by inspecting and auditing CPP's records. The agreement also promised that CPP would assign to McFee all the intellectual property related to her designs once the company had stopped using them. Presley added his personal assurance that he would protect her intellectual property rights. (*See* Compl. ¶¶ 28, 33–35; Defs.' Ex. A 2–3, 8–9, ECF No. 22.2.[2])

6. In 2012, at Presley's prodding, McFee agreed to alter her compensation. Presley informed her—falsely, she alleges—that CPP was performing poorly and that all senior management would take a pay cut. Relying on Presley's representations, McFee signed an amendment that gave her an annual salary but eliminated the royalty and inspection rights contained in her original employment agreement. (*See* Compl. ¶¶ 36–38; Defs.' Ex. A 32.)

7. A year later, again at Presley's prodding, McFee abandoned her membership interest. Presley convinced McFee that doing so was in CPP's best interests, representing that the company was worthless and that he and all the other owners would forfeit their interests too. In fact, CPP had significant value in part because it possessed the intellectual property related to McFee's designs. Also, Presley later acquired complete ownership of CPP—increasing his stake rather than giving it up. McFee alleges that she did not know the truth because "Presley told her that CPP

---

Inc. as "McFee" and refers to Presley and his codefendant C. Presley Properties, LLC as "Presley."

[2] Presley's exhibit A includes not only the original employment agreement but also several amendments. Citations are to the pages of the combined exhibit, not to the pages of any individual document contained within it.

was worthless and denied her access to books and records." (*See* Compl. ¶¶ 39, 41–43, 46, 47.)

8.    The work environment at CPP grew increasingly hostile from then on. Presley promoted his friend Bill Stacks, and the two began making key managerial decisions without consulting McFee and other senior employees. Then CPP cut McFee's pay again. McFee protested to Presley that she was being marginalized. They clashed one final time in May 2015, and he fired her. (*See* Compl. ¶¶ 55–57, 60, 63, 64.)

9.    A wave of litigation followed. In April 2016, McFee sued CPP in federal court for copyright infringement stemming from the use of her designs. (*See* Compl. ¶ 68.) The court dismissed her claim because she did "not have ownership of the intellectual property rights" at issue. *McFee v. CPP Int'l*, 2017 U.S. Dist. LEXIS 21462, at *8 (W.D.N.C. Feb. 15, 2017). The court further noted that CPP's failure to assign copyrights and related intellectual property to McFee might have been a breach of her employment agreement but declined jurisdiction over that issue. *See id.* at *8–9.

10.    So, in October 2017, McFee sued CPP for breach of contract in state court. For reasons that are not clear, CPP did not answer or make an appearance in that second lawsuit. As a result, in February 2020, the presiding superior court judge entered a default judgment, which included an award of damages and an assignment of intellectual property to McFee. (*See* Compl. ¶¶ 68, 69.)

11. While that lawsuit was pending, CPP ceased doing business. Presley and Stacks sold some of CPP's assets in October 2017 to a company called Pacon and the rest of its assets in March 2019 to a company called Bay Sales. McFee did not receive any of the proceeds from either sale. McFee believes that Bay Sales has infringed the copyrights assigned to her via the default judgment against CPP, and she has since sued one of its subsidiaries in federal court. (*See* Compl. ¶¶ 70, 73, 75, 81–84, 89, 96.)

12. This is McFee's fourth and most recent lawsuit. She alleges that Presley fraudulently induced her to abandon her membership interest and then schemed to steal her intellectual property and her share of the proceeds of CPP's asset sales. The complaint includes claims for breach of fiduciary duty, constructive fraud, fraud, fraudulent transfer, conversion, unjust enrichment, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1.[3]

13. Presley has moved to dismiss all claims under Rule 12(b)(6). The Court held a hearing on 30 June 2022, and the motion is now ripe.

## II.
## LEGAL STANDARD

14. A motion to dismiss "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats

---

[3] McFee has asserted many of these claims against CPP, Stacks, Stacks Holding, Inc., and Sabr Leme, Inc. These four defendants have not answered or otherwise responded to the complaint.

the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). The Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). The Court may also consider documents, such as contracts, that are the subject of the complaint. *See, e.g.*, *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

### III.
### ANALYSIS

15. McFee believes that she was swindled out of her membership in CPP, her intellectual property rights, and her share of the proceeds from CPP's asset sales. Presley contends that her allegations are missing key elements and therefore do not state an actionable claim. He also contends that most of her claims are time-barred. The Court begins with Presley's challenges to specific elements of the asserted claims before turning to questions of timeliness.

### A.  Breach of Fiduciary Duty and Constructive Fraud

16. Breach of fiduciary duty and constructive fraud are related, though distinct, causes of action. Essential to each is the existence of a fiduciary relationship. *See, e.g.*, *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *23–24 (N.C. Super. Ct. Oct. 2, 2017), *aff'd*, 371 N.C. 579 (2018); *Brown v. Secor*, 2017 NCBC LEXIS 65, at *18–19 (N.C. Super. Ct. July 28, 2017). A fiduciary relationship exists when a person places special confidence in a party who "is bound to act in good faith and in the best

interest of the" person reposing the confidence. *Lynn v. Fannie Mae*, 235 N.C. App. 77, 81 (2014).

17. Presley argues that the complaint does not adequately allege the existence of a fiduciary relationship. Generally, a manager of an LLC owes a fiduciary duty to the company but not to its members, and members do not owe fiduciary duties to the company or to each other. *See, e.g.*, *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 474 (2009). According to Presley, this means that he did not owe a fiduciary duty to McFee in his roles as member, manager, or officer of CPP.

18. In response, McFee points to the rule that, "under special circumstances, a director of a corporation stands in a fiduciary relationship to a shareholder or director in the acquisition of the shareholder's stock." *Lazenby v. Godwin*, 40 N.C. App. 487, 494 (1979). For example, "where the parties do not have equal access to the necessary information, a duty to disclose exists." *Id.* at 495. McFee contends that she has alleged special circumstances giving rise to a fiduciary relationship, including that Presley had control over CPP's finances and superior access to its financial information.

19. Because the case that McFee cites comes from the corporate context, Presley argues that its rationale does not apply to LLCs. The Court disagrees. It is true that "an LLC is primarily a creature of contract" and that "members are generally free to arrange their relationship however they wish." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at \*17 (N.C. Super. Ct. June 19, 2019) (citation and quotation marks omitted). This means that an LLC's members could draft an operating

agreement to narrow or eliminate fiduciary duties owed by members and managers. Or members could adopt comprehensive rules for transfers of membership interests, thus displacing default or background rules that might otherwise apply. But Presley does not contend that either is true of CPP's operating agreement. The Court therefore sees no reason not to consult traditional common-law rules in deciding whether McFee's complaint alleges a fiduciary relationship.

20. Presley also contends that he and McFee were on the same footing because the operating agreement gave her broad inspection rights. Though undoubtedly relevant, inspection rights are not always dispositive. In *Lazenby*, the Court of Appeals observed that the parties' actual access to financial information may be unequal even when their rights to company records are nominally equal. *See Lazenby*, 40 N.C. App. at 495 (describing evidence that parties did not have equal access even though "codirectors ordinarily have equal means of knowledge of the corporation's finances").

21. McFee has alleged informational inequality along with other special circumstances. Construed liberally, the complaint alleges that McFee had minimal experience with corporate finance; that Presley affirmatively misled her regarding CPP's financial position; that he asked her to abandon her membership interest; that he denied her access to books and records; and that CPP eventually sold its assets after Presley consolidated control. (*See, e.g.*, Compl. ¶¶ 39–43, 47, 70, 75.) Such allegations tend to show special circumstances that might support the existence of a fiduciary relationship. *See Lazenby*, 40 N.C. App. at 492 (citing "forthcoming sale of

assets," "fact that the director initiates" the shareholder's sale of stock, and "relative ages and experience in financial affairs of the director and shareholder" as special circumstances).

22. That is enough to sustain McFee's claim at this stage. The Court need not decide whether she has adequately alleged a fiduciary relationship on any other basis.

## B. Fraud

23. Fraud has five "essential elements": (a) a false representation or concealment of a material fact, (b) calculated to deceive, (c) made with intent to deceive, (d) that did in fact deceive, and (e) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). The plaintiff's reliance on the misrepresentation "must be reasonable." *Forbis v. Neal*, 361 N.C. 519, 527 (2007). "[W]hen the party relying on the false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346 (1999).

24. McFee claims that Presley committed fraud by falsely representing that CPP was worthless, that he and CPP's other owners would forfeit their ownership interests, and that he would ensure the assignment of intellectual property rights to her once CPP stopped using her designs. (*See* Compl. ¶ 118.) Presley contends that McFee has not adequately alleged reasonable reliance on the first two

representations because she could have discovered the truth about CPP's financial condition and ownership by exercising her right to inspect company records.

25. CPP's operating agreement gave McFee broad inspection rights, and it is possible, perhaps likely, that reviewing the right records would have revealed the truth. (*See* Defs.' Ex. B § 7.3, ECF No. 22.3.) But the complaint does not say what company records would have shown. And even if McFee could have discovered the truth, she has alleged enough facts to support an inference that she was denied the opportunity to investigate. Construed liberally, the complaint alleges that Presley affirmatively misled McFee, dissuaded her from investigating, and "denied her access to books and records." (Compl. ¶¶ 38–44.) Moreover, McFee's inspection rights were extinguished when she abandoned her membership interest, which would have limited her ability to investigate company records from 2013 onward.

26. Discovery may disprove these allegations. But for now, the Court must take them as true and, as a result, cannot dismiss the fraud claim on the ground that McFee's reliance was not reasonable. *See Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at *55–56 (N.C. Super. Ct. Feb. 9, 2018) (denying motion to dismiss because it was unclear from allegations whether party "could have discovered the truth of these matters via further inquiry"); *see also Bucci v. Burns*, 2018 NCBC LEXIS 93, at *6–7 (N.C. Super. Ct. Sept. 4, 2018).

## C. Fraudulent Transfer

27. The claim for fraudulent transfer is based on the sales of CPP's assets to Pacon in 2017 and to Bay Sales in 2019. Presley contends that he cannot be liable

for the latter sale because the complaint alleges that he gave up control of CPP in 2018. Not so. Although the complaint doesn't describe Presley's role after 2018 as clearly as it could, it does allege that he continued to share control of CPP. (*See* Compl. ¶ 66.) Lack of control is therefore not a basis to dismiss the claim in whole or in part.

## D. Unjust Enrichment

28. McFee alleges that Presley was unjustly enriched by retaining her intellectual property and her share of the proceeds from the sales of CPP's assets. Citing McFee's employment agreement, Presley invokes "the principle that unjust enrichment relief is not available in instances governed by an express contract." *College Rd. Animal Hosp., PLLC v. Cottrell*, 236 N.C. App. 259, 270 (2014). Here, though, it is disputed whether there is a valid, express contract because McFee alleges that her amended employment agreement and the agreement to abandon her membership interest are tainted by fraud. The Court therefore cannot conclude from the face of the complaint that an express contract bars the claim for unjust enrichment.

## E. Conversion

29. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956) (citation and quotation marks omitted). North Carolina does not recognize a claim for conversion of "intangible interests such as business

opportunities and expectancy interests." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414 (2000).

30. McFee claims that Presley converted her intellectual property rights, her ownership interest in CPP, and her share of the proceeds from the sale of CPP's assets. Presley argues that these are intangible interests not subject to a claim for conversion.

31. Intellectual property rights are indeed intangible interests. McFee contends that her intellectual property can be reduced to tangible things—notebooks, for example—that may be the subject of a claim for conversion. But she has not alleged conversion of products protected by intellectual property. She has alleged only conversion of the intellectual property itself, which does not state a claim for relief. *See, e.g.*, *Window World of N. Atlanta, Inc. v. Window World, Inc.*, 2018 NCBC LEXIS 111, at *9–10 (N.C. Super. Ct. Oct. 22, 2018) (dismissing claim for conversion of trademark rights); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *57–58 (N.C. Super. Ct. July 14, 2015) (same); *see also SQL Sentry, LLC v. ApexSQL, LLC*, 2017 NCBC 105, at *13 (N.C. Super. Ct. Nov. 20, 2017).

32. Membership in an LLC is also an intangible interest.[4] Thus, McFee's allegation that she was deprived of her membership interest in CPP does not give rise to a claim for conversion. *See Surratt v. Brown*, 2015 NCBC LEXIS 75, at *16 (N.C.

---

[4] At the hearing, McFee's counsel agreed as much and stated that this claim was not intended to allege conversion of her ownership interest. The complaint expressly includes it, though, so the Court addresses it. (*See* Compl. ¶ 137.)

Super. Ct. July 27, 2015) (dismissing claim for conversion of "membership interest in the LLC/Partnership").

33. The same is true for the proceeds from the sales of CPP's assets. Although money may be the subject of a claim for conversion in certain circumstances, those circumstances are not present. *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012). In a nutshell, McFee alleges that her membership interest in CPP should have been restored and that, if it had been, she would have held a contractual right to proceeds from the asset sales. This is not a claim for conversion of specific funds belonging to McFee. It is one for deprivation of a contingent, intangible expectancy interest and, as a result, not subject to a claim for conversion. *See, e.g.*, *Kapur v. IMW EMR, LLC*, 2020 NCBC LEXIS 148, at *25–26 (N.C. Super. Ct. Dec. 18, 2020) (dismissing claim for conversion of commissions expected under contract); *Gottfried v. Covington*, 2014 NCBC LEXIS 26, at *19 (N.C. Super. Ct. June 25, 2014) (dismissing conversion claim for "intangible, contractual expectancy" to royalties).

34. The Court therefore grants the motion to dismiss the claim for conversion.

F. Section 75-1.1

35. The General Assembly has declared that "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C.G.S. § 75-1.1. Presley argues that his alleged actions are not in or affecting commerce because they were internal to CPP and involved extraordinary events rather than day-to-day business activities.

36.     Section 75-1.1 is "not intended to apply to all wrongs in a business setting." *Dalton v. Camp*, 353 N.C. 647, 657 (2001).  Its "language is broad enough 'to regulate a business's regular interactions with other market participants' but not so broad as to capture conduct 'solely related to the internal operations' of a business."  *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at \*16 (N.C. Super. Ct. July 26, 2018) (quoting *White v. Thompson*, 364 N.C. 47, 51–52 (2010)).  Thus, "any unfair or deceptive conduct contained solely within a single business is not covered by" section 75-1.1.  *White*, 364 N.C. at 53; *see also Nobel v. Foxmoor Group,* 380 N.C. 116, 120–21 (2022).

37.     Likewise, certain extraordinary events beyond the regular, day-to-day activities of a business fall outside the statute's purview.  These include securities transactions, efforts to raise capital, and similar activities.  *See, e.g., Nobel,* 380 N.C. at 120–21; *HAJMM Co. v. House of Raeford Farms*, 328 N.C. 578, 593 (1991); *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 275 (1985).

38.     All the alleged wrongdoing here was internal to CPP.  McFee's section 75-1.1 claim, like all her other claims, is based on allegations that Presley defrauded her, induced her to abandon her membership interest, deprived her of intellectual property rights to designs she created while working for CPP, and refused to share proceeds from sales of CPP's assets.  These are internal disputes between an employee and minority owner of CPP (McFee) and her boss and co-owner (Presley).  *See, e.g., Nobel*, 380 N.C. at 121–22 ("The investments provided by plaintiff, and any related exchanges, concern the internal operations of Foxmoor, and plaintiff's claim

is based solely on the interaction between her, as an investor, and the company's member manager."); *Carrington v. Carolina Day Sch., Inc.*, 2020 N.C. App. LEXIS 104, at \*8 (Feb. 4, 2020) (unpublished) (holding that section 75-1.1 "does not apply to the employer-employee relationship"); *Alexander v. Alexander*, 250 N.C. App. 511, 517 (2016) (concluding that section 75-1.1 does not cover "misappropriation of corporate funds"); *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC LEXIS 216, at \*82–83 (N.C. Super. Ct. Dec. 10, 2018) (dismissing claim based on "acts related to one member's buyout of another member's interest in an LLC").

39. McFee observes that the asset sales to Pacon and Bay Sales involve other market participants. But her claim is not based on an allegation that Presley directed unfairness or deception toward those third parties. It is based on allegations that Presley interfered with the intellectual property rights that McFee held under her employment agreement and withheld the share of sale proceeds that she would have received as a member. Thus, any unfairness "inheres in the relationship between" McFee and Presley as employees and co-owners of CPP. *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at \*15 (N.C. Super. Ct. Mar. 27, 2018); *see also Poluka v. Willette*, 2021 NCBC LEXIS 105, at \*18–21 (N.C. Super. Ct. Dec. 2, 2021) (dismissing claim involving transfer of trademark registration to third party); *Botanisol Holdings II, LLC v. Propheter*, 2021 NCBC LEXIS 94, at \*27 (N.C. Super. Ct. Oct. 18, 2021) (dismissing claim involving third party "used merely as an instrument to facilitate harm within the first entity"); *Worley v. Moore*, 2017 NCBC LEXIS 15, at \*76 (N.C. Super. Ct. Feb. 28, 2017) (dismissing claim involving allegations that defendants

structured merger with another company to benefit themselves); *Powell v. Dunn*, 2014 NCBC LEXIS 3, at *10–11 (N.C. Super. Ct. Jan. 28, 2014) (dismissing claim despite involvement of third-party investment bank and acquirer in merger process).

40.    McFee may be able to pursue other claims for relief based on these allegations. But because the alleged conduct, even if true, relates to disputes internal to CPP and is not in or affecting commerce, the Court dismisses the section 75-1.1 claim.

## G. Timeliness

41.    The final dispute is about timeliness. Presley argues that nearly every claim is partly or wholly time-barred by an applicable statute of limitations or statute of repose. The sole omission is constructive fraud, which has a ten-year statute of limitations. Thus, the Court need not and does not consider the timeliness of the claim for constructive fraud, which is unchallenged, or that of the claims for conversion and violations of section 75-1.1, which have been dismissed.

42.    "A statute of limitations or repose may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994). This is a strict standard. The facts needed to show that a claim is untimely must be "alleged or admitted in the complaint, construing the complaint liberally in favor of plaintiff." *Lau v. Constable*, 2017 NCBC LEXIS 10, at *10 (N.C. Super. Ct. Feb. 7, 2017) (citing *Fox v. Sara Lee Corp.*, 210 N.C. App. 706, 708–09 (2011)).

43. The limitations period for claims of fraud, breach of fiduciary duty, and unjust enrichment is three years. *See* N.C.G.S. § 1–52. Generally, "a statute of limitations should not begin running against a plaintiff until the plaintiff has knowledge that a wrong has been inflicted upon him." *Chisum v. Campagna*, 376 N.C. 680, 701 (2020) (quoting *Black v. Littlejohn*, 312 N.C. 626, 639 (1985)) (cleaned up). In other words, "accrual of the limitations period does not begin when the defendant's conduct occurred, but when the plaintiff discovered it" or reasonably should have discovered it. *Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at *52 (N.C. Super. Ct. Dec. 31, 2019) (citing *Forbis*, 361 N.C. at 524).

44. Claims for fraudulent transfer are subject to a four-year statute of repose. *See* N.C.G.S. § 39-23.9. A savings clause allows a plaintiff to assert a claim "not later than one year after the transfer or obligation was or could reasonably have been discovered." *Id.* § 39-23.9(1); *see also id.* § 39-23.4(a)(1).

45. McFee filed this action in November 2021. She alleges that the sales of CPP's assets to Pacon and Bay Sales first alerted her to Presley's wrongdoing and that she discovered these sales only recently. (*See, e.g.*, Compl. ¶¶ 109, 123.) On that basis, she contends that her claims are timely under any of the governing statutes.

46. Presley asserts several arguments. He contends, first, that it should have been apparent to McFee during her continued employment with CPP between 2013 and 2015 that the company had value and that its owners hadn't given up their membership interests. This is unpersuasive. The complaint's allegations, taken as true, suggest that CPP struggled in the marketplace after 2013 and that some of its

owners did in fact transfer their membership interests. (*See, e.g.*, Compl. ¶¶ 46, 47, 60.) If so, whether Presley's representations were false may not have been apparent to McFee. Put simply, what McFee "should have known is a fact-intensive inquiry not suited to a Rule 12(b)(6) motion." *Inhold, LLC v. PureShield, Inc.*, 2020 NCBC LEXIS 107, at *14 (N.C. Super. Ct. Sept. 22, 2020); *see also Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 486 (2004) (noting that when a plaintiff should have discovered alleged wrongdoing is usually a question of fact); *Dawn v. Dawn*, 122 N.C. App. 493, 495 (1996) ("Our cases suggest that the question of when a plaintiff knew or should have known of an alleged breach of fiduciary duty is for the trier of fact to resolve.").

47. Next, Presley asks the Court to take judicial notice of McFee's court filings in her 2016 and 2017 lawsuits against CPP. These filings, he contends, show not only that McFee knew of her injuries but also that any fiduciary relationship between her and Presley had been extinguished when they became adversaries. McFee objects that these documents are extrinsic to the complaint. Even if it is appropriate to consider these documents, they do not require dismissal. Presley was not a defendant in the earlier lawsuits. Certainly, the disputed filings show that McFee believed she had been injured by CPP, but fact questions remain as to whether she knew or should have known that *Presley* had made misrepresentations to her, breached his fiduciary duties, or otherwise caused her injuries. *See Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 75–76 (2013) (reversing dismissal because it was unclear from face of complaint whether limitations period had run).

48. Finally, although Presley concedes that the claim for fraudulent transfer based on the 2019 sale to Bay Sales is timely, he contends that any claim based on the 2017 sale to Pacon is barred by the four-year statute of repose. Presley contends that McFee cannot rely on the savings clause because she knew by October 2020 that CPP had ceased doing business. Even if that is true, Presley has not pointed to anything in the complaint showing that McFee knew or should have known that CPP had sold assets to Pacon. The Court cannot conclude that the claim is time-barred.[5]

49. Many of the disputed events occurred years ago. Discovery may show that McFee should have known the basis for her claims much earlier and that, as a result, the statutes of limitation and repose bar her claims. But the Court is not convinced that the claims are untimely from the face of the complaint and therefore declines to dismiss any claims on that basis.

## IV.
## CONCLUSION

50. For all these reasons, the Court **GRANTS** the motion in part and **DISMISSES** the claims for conversion and violations of section 75-1.1. The Court **DENIES** the motion in all other respects.

---

[5] Presley also contends that the sale to Pacon could not have been made with "intent to hinder, delay, or defraud," as required by N.C.G.S. § 39-23.4(a)(1). What Presley knew and intended at the time of the sale to Pacon are fact-intensive questions that cannot be resolved on the pleadings.

**SO ORDERED**, this the 11th day of July, 2022.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases