LEONARD J. KAPLAN, Plaintiff v. O.K. TECHNOLOGIES, L.L.C., LAURENT OLIVIER, DAVID F. MESCHAN, JEFFREY BOWMAN, and AQUATIC EVOLUTION INTERNATIONAL, INC., Defendants

No. COA08-1297

(Filed 21 April 2009)

**1. Fiduciary Relationship— limited liability company—member-manager—no fiduciary duty to other member-managers**

A limited liability company (LLC) member did not owe a fiduciary duty as a member of the LLC to other members where he was a minority shareholder of the LLC. Nor did he owe a fiduciary duty as a manager of the LLC to other members and managers because he owed a fiduciary duty as a manager only to the company and not to individual members and managers.

**2. Fiduciary Relationship— limited liability company—sole investor—no fiduciary duty to other members**

The trial court did not err by granting summary judgment for plaintiff Kaplan in an action involving the dissolution of a limited liability company (LLC) and the disputed repayment of loans made by plaintiff to the LLC. Plaintiff's status as the sole investor in the LLC, absent more, was not sufficient to find a fiduciary relationship between plaintiff and defendants who were the other members of the LLC.

**3. Fiduciary Relationship— limited liability company— closely-held—operating agreement—no fiduciary duty to other members**

Plaintiff's status as a member-manager of a closely-held limited liability company (LLC) did not create a fiduciary duty by plaintiff to other members of the LLC where the parties expressly limited the duties of the member-managers in their operating

agreement, and plaintiff's liability for breach of his duties under the agreement would extend only to the company, which is not an appellant in this matter.

**4. Fiduciary Relationship— limited liability company—no fiduciary duty by member to another company**

Plaintiff limited liability company (LLC) member did not have a fiduciary duty to a corporation which had assigned all of its intellectual property to the LLC where the corporation's shareholders were the LLC's other members; the corporation was not a subsidiary of the LLC and the LLC did not market, manufacture or sell the corporation's components; plaintiff did not provide any money to the corporation; and plaintiff had no dominance or control over the corporation.

Appeal by Defendants Laurent Olivier, Jeffrey Bowman, and Aquatic Evolution International, Inc. from order entered 7 July 2008 by Judge Ben F. Tennille in Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 12 March 2009.

*Smith Moore Leatherwood LLP, by Alan W. Duncan and Manning A. Connors, for Plaintiff-Appellee.*

*Hunter, Higgins, Miles, Elam & Benjamin, PLLC, by James W. Miles, Jr., for Defendants-Appellants Laurent Olivier, Jeffrey Bowman, and Aquatic Evolution International, Inc.*

STEPHENS, Judge.

Laurent Olivier ("Olivier"), Jeffrey Bowman ("Bowman"), and Aquatic Evolution International, Inc. ("AEI") (collectively "Appellants") appeal from an order granting summary judgment in favor of Leonard J. Kaplan ("Kaplan").

*I. Facts and Procedural History*

In 2002, Defendants Olivier and Bowman formed AEI for the purpose of developing, manufacturing, and selling aquarium components. Olivier, Bowman, and Kaplan formed O.K. Technologies, L.L.C. ("O.K.") in September 2003. At this time, AEI assigned all of its intellectual property to O.K. Under O.K.'s operating agreement, Kaplan held 51% of the ownership interest, while Olivier held 43%, and Bowman held 6%. The operating agreement stipulated that management decisions would be made by the "Majority in Interest[,]" meaning the members whose interests in O.K. constituted a majority. In

July 2004, David Meschan ("Meschan") joined O.K. As a result of Meschan's admission as a member, Kaplan held 41.5% of the ownership interest in O.K., Olivier held 37.5% interest, Meschan held 15% interest, and Bowman held 6% interest.

Under O.K.'s operating agreement, Kaplan was obligated to provide $200,000 in equity capital to O.K. Kaplan completed his $200,000 equity contribution in May 2004. The operating agreement also obligated Kaplan to provide $500,000 in loans to O.K. Kaplan ultimately provided $1,864,749 in loans to O.K. between May 2004 and 31 July 2006. Although Kaplan did not seek approval of the other members prior to making these loans, O.K. and its members accepted Kaplan's loans and used them to discharge O.K.'s costs and obligations. In May 2005, Kaplan requested a promissory note for the amounts he had loaned to O.K. On 28 June 2006, Kaplan requested repayment of the loans.

On 31 July 2006, Kaplan, Olivier, Bowman, and Meschan voted to dissolve O.K. During the 31 July 2006 meeting, the members could not agree on a mechanism for repaying the loans made by Kaplan. Also during this meeting, Meschan moved to designate Olivier and himself as O.K.'s representatives for the purpose of initiating future contact with any potential buyers or licensees and negotiating any sale of assets or licensing of any technologies owned by or assigned to O.K. Meschan, Olivier, and Bowman voted their combined membership interest of 58.5% in favor of Meschan's motion and Kaplan voted his 41.5% interest against the motion.

On 21 September 2006, Kaplan filed a complaint against O.K., Olivier, Meschan, Bowman, and AEI alleging a breach of fiduciary duty and seeking a declaratory judgment that O.K. had failed to repay loans from Kaplan. This matter was designated as a complex business case in an order filed 26 September 2006, and Special Superior Court Judge Ben F. Tennille ("the trial court") was assigned to preside over the case. On 4 October 2006, the trial court appointed William P. Miller as Receiver for O.K. and directed him to wind up the affairs of O.K.

Appellants filed an answer, crossclaims, and counterclaims on 18 January 2007 alleging, *inter alia*, breaches of fiduciary duty and fraud by Kaplan. Olivier and Bowman filed a motion to amend counterclaim and crossclaim on 5 December 2007 to assert derivative claims on behalf of O.K. against Kaplan. Kaplan filed a motion for summary judgment on 17 December 2007, seeking judgment as a

KAPLAN v. O.K. TECHS., L.L.C.

[196 N.C. App. 469 (2009)]

matter of law on all claims and counterclaims. In a written order filed 7 July 2008, the trial court granted Kaplan's motion for summary judgment to enforce the operating agreement and Kaplan's motion for summary judgment on all counterclaims asserted by Appellants. Appellants appeal from this order.

## II. Existence of Fiduciary Relationship

Appellants assign as error the trial court's granting of Kaplan's motion for summary judgment and argue that material issues of fact exist as to whether Kaplan violated his fiduciary duties.[1] We hold the trial court did not err.

"A trial court's ruling on a motion for summary judgment is reviewable *de novo* to determine whether there is any genuine issue of material fact and whether either party is entitled to judgment as a matter of law." *Showalter v. North Carolina Dept. of Crime Control and Public Safety*, 183 N.C. App. 132, 134, 643 S.E.2d 649, 651 (2007). "We review the record in the light most favorable to the non-moving party." *Bradley v. Hidden Valley Transp., Inc.*, 148 N.C. App. 163, 165, 557 S.E.2d 610, 612 (2001), *aff'd*, 355 N.C. 485, 562 S.E.2d 422 (2002) (citation omitted).

"For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citations omitted). A fiduciary relationship has been defined by our Supreme Court as

> one in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . , [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*."

*Id.* at 651, 548 S.E.2d at 707-08 (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (internal quotation marks and citation omitted)). The trial court held that no fiduciary relationship existed between Kaplan and Appellants. Kaplan's relationship with Olivier and Bowman differs from Kaplan's relationship to AEI, and thus, we address these relationships separately.

---

1.· Appellants do not assign error to the trial court's entry of summary judgment for Kaplan on their remaining counterclaims.

**KAPLAN v. O.K. TECHS., L.L.C.**

[196 N.C. App. 469 (2009)]

### A. Kaplan's Relationship with Olivier and Bowman

Initially, we address Kaplan's relationship with Olivier and Bowman. Olivier and Bowman argue Kaplan's fiduciary duties to them arose from the following: (1) Kaplan's role as a member-manager of O.K.; (2) Kaplan's minority interest in O.K. coupled with his control over the company's finances and operations; and (3) Kaplan's role as a member in a closely-held limited liability company ("LLC"). We address each of these relationships in turn.

### i. Kaplan as a Member and Manager

[1] First, we consider Kaplan's relationship with Olivier and Bowman based on his position as a member and a manager of O.K. Kaplan, Olivier, and Bowman were members of O.K. O.K.'s operating agreement states O.K. shall be managed by its members. Thus, as members, Kaplan, Olivier, and Bowman were also managers of O.K.

Kaplan's status as a member of O.K. did not create a fiduciary relationship between Kaplan and Olivier and Bowman. The North Carolina Limited Liability Company Act, N.C. Gen. Stat. § 57C-1-01 *et seq.*, does not create fiduciary duties among members. Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company. *See Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993) (holding "[a]s a general rule, shareholders do not owe a fiduciary duty to each other or to the corporation") (citing Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 11.4 (4th ed. 1990)). An exception to this rule is that a controlling shareholder owes a fiduciary duty to minority shareholders. *Id.*; *see Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951) (holding majority shareholders of a corporation owe a fiduciary duty to minority shareholders). Kaplan's interest in O.K. was reduced to 41.5% when Meschan became a member of O.K., and therefore Kaplan was a minority shareholder with no fiduciary duty to the other members.

Nor did Kaplan's relationship with Olivier and Bowman as a manager of O.K. create a fiduciary duty. Pursuant to the North Carolina Limited Liability Act, a manager of a limited liability company "shall discharge his duties as manager in good faith, with the care an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company." N.C. Gen.

Stat. § 57C-3-22(b) (2007). These duties are owed by the manager to the company, rather than to other managers, however. *See id.* Managers of limited liability companies are similar to directors of a corporation in that "[u]nder North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation,* and where it is alleged that directors have breached this duty, the action is properly maintained *by the corporation* rather than any individual creditor or stockholder." *Governors Club, Inc. v. Governors Club Ltd. P'ship,* 152 N.C. App. 240, 248, 567 S.E.2d 781, 786-87 (2002) (citing *Underwood v. Stafford,* 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967)), *aff'd,* 357 N.C. 46, 577 S.E.2d 620 (2003); *see also Keener Lumber Co. v. Perry,* 149 N.C. App. 19, 26, 560 S.E.2d 817, 822, *disc. review denied,* 356 N.C. 164, 568 S.E.2d 196 (2002). Thus, like directors, managers of a limited liability company also owe a fiduciary duty to the company, and not to individual members. Accordingly, Kaplan did not owe any fiduciary duty to Olivier and Bowman based on their relationship as managers of O.K.

### ii. Kaplan as O.K.'s Sole Investor

[2] Second, we consider Kaplan's relationship with Olivier and Bowman based on his status as O.K.'s sole investor. Olivier and Bowman argue that Kaplan made O.K. completely dependent upon Kaplan's financing and that this resulted in such domination and control as to create a fiduciary relationship. Although our courts have broadly defined fiduciary relationships, no such relationship arises absent the existence of dominion and control by one party over another. *See Dalton v. Camp,* 353 N.C. 647, 651, 548 S.E.2d 704, 707-08 (2001). The trial court found that "[l]ike an investor in a corporation, Kaplan's position as the holder of the purse strings did not create a fiduciary duty." We agree.

In *Dalton,* our Supreme Court considered whether the relationship between an employee and employer involved the requisite level of dominion and influence to find that a fiduciary relationship existed where the employee was a production manager for the employer's publishing business. *Id.* at 651, 548 S.E.2d at 708. The Court found that the employer had reposed a certain level of confidence in the employee, and as a confidant of his employer, the employee was bound to act in good faith and with due regard for the employer's interests. *Id.* at 651-52, 548 S.E.2d at 708. However, the Court found these circumstances to be true of virtually all employer-employee relationships and, without more, they were inadequate to establish the employee's obligations as fiduciary in nature. *Id.* at 652, 548

S.E.2d at 708. In holding that no evidence suggested the employee's position in the workplace resulted in dominion and influence over the employer, the *Dalton* Court noted:

> [The employee] was hired as an at-will employee to manage the production of a publication. His duties were those delegated to him by his employer, such as overseeing the business's day-to-day operations by ordering parts and supplies, operating within budgetary constraints, and meeting production deadlines. In sum, his responsibilities were not unlike those of employees in other businesses and can hardly be construed as uniquely positioning him to exercise dominion over [the employer]. Thus, absent a finding that the employer in the instant case was somehow subjugated to the improper influences or domination of his employee—an unlikely scenario as a general proposition and one not evidenced by these facts in particular—we cannot conclude that a fiduciary relationship existed between the two.

*Id.*

In *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 391 S.E.2d 831 (1990), this Court considered whether a distributor's dependence on a manufacturer resulted in the existence of a fiduciary relationship. The plaintiffs were distributors of decorative tin items, and the defendants were manufacturers of these items. *Id.* at 664, 391 S.E.2d at 832. These decorative tin items constituted 80% of the plaintiff's sales. *Id.* at 665, 391 S.E.2d at 833. The plaintiff argued that its dependence on the defendants required plaintiff to place the special kind of "trust and confidence in defendants" that establishes a fiduciary relationship. *Id.* at 665, 391 S.E.2d at 832-33. This Court held that "the evidence [was] insufficient to submit to the jury the issue of whether a fiduciary relationship existed between the parties." *Id.* at 666, 391 S.E.2d at 833.

In *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998), the Fourth Circuit noted that "[o]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Id.* (citing *Lazenby v. Godwin*, 40 N.C. App. 487, 253 S.E.2d 489 (1979)) (internal quotation marks omitted). In *Lazenby*, our Court considered whether such "special circumstances" existed to establish a fiduciary duty between the parties with regard to the sale of the plaintiffs' minority interests in a closely-held family corpora-

tion to the defendant. *Lazenby*, 40 N.C. App. 487, 253 S.E.2d 489. The defendant in *Lazenby* was the president, manager, and majority shareholder of the corporation. *Id.* at 488, 253 S.E.2d at 489. "Although the plaintiffs were technically codirectors of the corporation, they did not take part in the management of the corporation. They placed their trust in the business skills and judgment of the defendant because the plaintiffs had less experience than defendant in corporate affairs." *Id.* at 494, 253 S.E.2d at 493. This Court concluded there was sufficient evidence that the plaintiffs did not have equal access to information regarding a purchase of the corporation's assets, and that the defendant, therefore, owed a special duty to the plaintiffs in negotiating the sale of their minority interests. *Id.* at 495, 253 S.E.2d at 493.

In the present case, Olivier and Bowman argue that Kaplan "made himself the sole source of funding" for O.K., which resulted in the level of domination contemplated by our Courts in defining a fiduciary relationship. Our Courts have previously held that no fiduciary relationship exists between managers of an organization and its creditors. "Ordinarily, '[t]he duties and liabilities of directors . . . run directly to the corporation and indirectly to its shareholders; they do not run to third parties, such as creditors.' " *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 57, 554 S.E.2d 840, 845 (2001) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 14.08 (6th ed. 2000)). Thus, without more, we cannot find that Kaplan's status as O.K.'s sole investor creates a fiduciary relationship between Kaplan and Olivier and Bowman.

Unlike in *Lazenby*, Kaplan's relationship to Olivier and Bowman was not the kind where one party figuratively held all the cards. *See Lazenby*, 40 N.C. App. 487, 253 S.E.2d 489; *Broussard*, 155 F.3d 331, 348. First, Olivier and Bowman were not inexperienced businessmen. Olivier completed a two-year business course at a school in New Caledonia; he worked for the government of New Caledonia as the equivalent of an "environmental engineer" for approximately seven years; and he spent three years operating his own business, catching and exporting exotic tropical fish and selling and marketing aquariums. Bowman started AEI with Olivier, had experience servicing aquariums, and was the individual who approached Kaplan about forming O.K. in the first place.

Olivier and Bowman argue that Kaplan manipulated O.K. to ensure that he was the only source of funds for the company and then used this position to direct the company's resources to further his

own agenda. However, under the terms of the operating agreement agreed to and signed by all the parties, Kaplan was the only member required to provide equity capital and loans to O.K. Although Kaplan provided loans in excess of his obligations under the operating agreement, Olivier and Bowman accepted these loans and used them to discharge the company's costs and obligations, including payment of their salaries and reimbursement of their expenses.

Furthermore, Kaplan was a minority shareholder of O.K., and the alliance formed by Olivier, Bowman and Meschan represented the majority. O.K.'s operating agreement provided that the vote of the majority controlled management decisions. Olivier, Bowman, and Meschan exhibited their ability to control management decisions in the vote on 31 July 2006 regarding a repayment plan for Kaplan's loans to O.K. Olivier, Bowman, and Meschan outvoted Kaplan to pass a motion designating Olivier and Meschan as representatives for communicating and negotiating with potential buyers and licensees in winding up the company. Clearly, Kaplan's position as "the holder of the purse strings" was insufficient to override the will of the majority.

Finally, Olivier expressly discussed the inability of one member to make unilateral decisions for O.K. in an email to the other partners on 15 August 2006. In this email Olivier stated, "[J]ust . . . remember every[]body, no member has to give any order to other member, about what they have to do, only a majority vote can impose that[.]" Olivier also specifically commented on Kaplan's inability to control the actions of the other members based on his financial contributions to O.K. Olivier wrote:

> For Leonard [Kaplan], I'm sorry to tell you, you don't own any asset of [O.K.] Technologies, the company owns them. This is not your money anymore, and you cannot tell me or other members what they have to do, or take initiative in the company other than try to help us to sell the asset.

Thus, Olivier himself disputed Kaplan's ability to control the other members. Accordingly, Olivier and Bowman's contention that Kaplan exercised dominion and control over the other members so as to create a fiduciary relationship is wholly unconvincing. This argument is rejected.

### iii. Kaplan as a Member in a Closely-held LLC

[3] Lastly, we consider Kaplan's relationship with Olivier and Bowman by virtue of Kaplan's status as a member in a closely-held

LLC. Although we primarily addressed this issue above, Olivier and Bowman also argue that Kaplan owed them a fiduciary duty based on the sole fact that O.K. was a closely-held LLC. Olivier and Bowman argue that the relationship between members of a closely-held LLC is like the fiduciary relationship between partners in a partnership. *See Compton v. Kirby*, 157 N.C. App. 1, 15, 577 S.E.2d 905, 914 (2003); *Casey v. Grantham*, 239 N.C. 121, 124-25, 79 S.E.2d 735, 738 (1954) ("It is elementary that the relationship of partners is fiduciary"). Olivier and Bowman, however, ignore the fact that by their operating agreement, the parties expressly limited the duties the member-managers owed.

N.C. Gen. Stat. § 57C-3-32 (2008) provides:

(a) Subject to subsection (b) of this section, the articles of organization or a written operating agreement may:

(1) Eliminate or limit the personal liability of a manager, director, or executive for monetary damages for breach of any duty provided for in G.S. 57C-3-22 . . . .

. . . .

(b) No provision permitted under subsection (a) of this section shall limit, eliminate, or indemnify against the liability of a manager, director, or executive for (i) acts or omissions that the manager, director, or executive knew at the time of the acts or omissions were clearly in conflict with the interests of the limited liability company, (ii) any transaction from which the manager, director, or executive derived an improper personal benefit, or (iii) acts or omissions occurring prior to the date the provision became effective[.]

Consistent with N.C. Gen. Stat. § 57C-3-32, the members of O.K. contractually agreed to limit their duties and corresponding liability as managers. Section 5.3 of O.K.'s operating agreement provides:

Notwithstanding any other provision to the contrary contained in this Agreement, no Member shall be liable, responsible, or accountable in damages or otherwise to the LLC or to any other Member or assignee of a Member for any loss, damage, cost, liability, or expense incurred by reason of or caused by any act or omission performed or omitted by such Member, whether alleged to be based upon or arising from errors in judgment, negligence, gross negligence, or breach of duty (including alleged breach of

any duty of care or duty of loyalty or other fiduciary duty), except for (i) acts or omissions the Member knew at the time of the acts or omissions were clearly in conflict with the interests of the LLC, (ii) any transaction from which the Member derived an improper personal benefit, or (iii) a willful breach of this Agreement. Without limiting the foregoing, no Member shall in any event be liable for (A) the failure to take any action not specifically required to be taken by the Member under the terms of this Agreement, (B) any action or omission taken or suffered by any other Member, or (C) any mistake, misconduct, negligence, dishonesty or bad faith on the part of any employee or other agent of the LLC appointed by such Member in good faith.

This section of the operating agreement clearly limits the members' liability to the three exceptions listed above. Olivier and Bowman argue Kaplan's actions subjected him to liability under sections 5.3(i) and (ii) of the operating agreement. Assuming *arguendo* that Kaplan breached his duties under the operating agreement, his liability would extend only to the company, and not to Olivier and Bowman. As O.K. is not a named appellant in this matter, we will not address Kaplan's potential liability to O.K. Accordingly, no genuine issues of material fact exist as to the issue of Kaplan's fiduciary obligations to Olivier and Bowman by virtue of their relationship as members in a closely-held LLC.

### B. *Kaplan's Relationship with AEI*

[4] Appellants have not specifically argued how Kaplan's tenuous relationship with AEI resulted in the existence of a fiduciary duty from Kaplan to AEI. The trial court found that:

Kaplan had only a tenuous relationship with AEI. Olivier and Bowman are the sole shareholders of AEI. AEI was not a subsidiary of O.K. nor did O.K. market, manufacture or sell AEI's components. Kaplan did not provide any money to AEI after O.K. was formed. Kaplan had no dominance or control over AEI.

Appellants have not presented any facts that indicate the relationship between Kaplan and AEI was "one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (internal quotation marks and citation omitted). "[I]t is fundamental that a fiduciary relationship must exist

between the parties in order for a breach of fiduciary duty to occur." *Branch v. High Rock Realty, Inc.* 151 N.C. App. 244, 251, 565 S.E.2d 248, 253 (2002), *disc. review denied,* 356 N.C. 667, 576 S.E.2d 330 (2003). No fiduciary relationship existed between Kaplan and AEI, and therefore, no fiduciary duty was owed.

AFFIRMED.

Judges JACKSON and STROUD concur.