Brady v. Van Vlaanderen, 2016 NCBC 56.

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 7552

PATRICIA M. BRADY,

Plaintiff,

v.

BRYANT C. VAN VLAANDEREN;
RENEE M. VAN VLAANDEREN;
MARC S. TOWNSEND; LINDA M.
TOWNSEND; UNITED TOOL &
STAMPING COMPANY OF NORTH
CAROLINA, INC.; UNITED
REALTY OF NORTH CAROLINA,
LLC; ENTERPRISE REALTY, LLC;
and WATERS EDGE TOWN
APARTMENTS, LLC,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION

{1}     THIS MATTER is before the Court on Defendant Enterprise Realty, LLC's Motion for Summary Judgment ("Enterprise's Motion").  For the reasons expressed below, Enterprise's Motion is GRANTED in part and DENIED in part.

*Bain & McRae, LLP by Edgar R. Bain for Plaintiff.*

*Shanahan Law Group, PLLC by Kieran J. Shanahan, Brandon S. Neuman, and Jeffrey M. Kelly for Defendants.*

Gale, Chief Judge.

## I.     INTRODUCTION

{2}     Plaintiff Patricia M. Brady ("Brady"), and Defendants Bryant C. Van Vlaanderen ("B. Van Vlaanderen"), Renee M. Van Vlaanderen ("R. Van Vlaanderen"), Marc S. Townsend ("M. Townsend"), and Linda M. Townsend ("L. Townsend") (collectively, without Brady, the "Individual Defendants"; with Brady, the "Members") are family members, each of whom have or had ownership interests in the various Defendant companies.  Brady asserts that her employment with Defendant United Tool & Stamping Company of North Carolina, Inc. ("United Tool") was wrongfully terminated, that she has been unfairly excluded from participating in management of the various company Defendants, and that she has

not been allowed access to documents and information regarding the companies. She has brought claims for judicial dissolution ("*Meiselman* claim(s)") and inspection of corporate records against each of the companies, and other claims against the Individual Defendants.

{3}     The present motion relates solely to claims involving Enterprise Realty, LLC ("Enterprise"), of which Brady is a one-third owner.[1]  Enterprise has brought counterclaims—namely for breach of Enterprise's operating agreement and breach of fiduciary duty—to recover contributions that it contends Brady was required to make under Enterprise's operating agreement.

{4}     Brady does not deny that she and the Individual Defendants agreed to make such capital contributions as necessary to cover Enterprise's shortfalls and pay down its debt, nor does she deny that she and the Individual Defendants agreed to sell Enterprise's properties, likely at a loss.  However, Brady argues that she has not been given access to adequate documentation to determine the amount of the capital contribution, if any, that she should be required to make to Enterprise, and also that she should be excused from making the capital contributions because of her exclusion from, and the mismanagement of, Enterprise and the other company Defendants.

{5}     Enterprise also counterclaims that Brady breached her fiduciary duty to Enterprise by refusing to make contributions that were necessary for the best interests of the company.  However, the record makes clear that Brady did not owe Enterprise a fiduciary duty, even though she may have been contractually obligated to make certain payments.

{6}     The Court concludes that Brady has now been given full access to any and all documentation related to her claims involving Enterprise, that her allegations against the other company Defendants do not excuse Brady from her obligation make capital contributions, and that Brady did not owe a fiduciary duty to Enterprise to make capital contributions and thus did not breach a duty by

---

[1] Because of the nature of Enterprise's structure and business, the Court may consider claims involving Enterprise separately from other claims in this matter, even though Brady makes similar claims against each of the company Defendants.

failing to make those contributions. Accordingly, Enterprise is entitled to summary judgment on all of Brady's claims and on its claim for breach of the operating agreement. As to Enterprise's claim that Brady's failure to make capital contributions was a breach of her fiduciary duty to Enterprise, the Court concludes that the uncontested record indicates that Brady had no fiduciary duty to make those contributions and that any failure to make the contributions was instead a matter of contract between Enterprise's members, as a result of which Enterprise's claim for breach of fiduciary duty should be dismissed.

## II. PROCEDURAL HISTORY

{7} Brady filed her original Complaint on August 24, 2012. The case was designated as a complex business case on September 12, 2012, and assigned to the undersigned on September 19, 2012. The operative complaint in this matter is the Second Amended Complaint, which was filed on August 6, 2013, and which brings two claims against Enterprise: a claim for inspection of Enterprise's records and a *Meiselman* claim. The Court case stayed the case by consent of the parties from August 26, 2013, until March 15, 2014.

{8} Defendants filed their Answer and Counterclaims on April 21, 2014. Enterprise asserts two counterclaims: breach of operating agreement and breach of fiduciary duty. Brady replied to Enterprise's counterclaims on May 16, 2014.

{9} The case has involved an unusual amount of contested discovery. Ultimately, Enterprise's Motion was filed on April 9, 2015, and briefing was completed on June 17, 2015. On June 3, 2015, the Court dismissed Brady's claim against Defendant United Realty of North Carolina, LLC ("United Realty") for inspection of corporate records, following Brady's admission that Defendants have provided her with copies of, or access to, all documents to which she contends that she is entitled. *See Brady v. Van Vlaanderen*, No. 12 CVS 7552, 2015 NCBC LEXIS 59, at *6–7 (N.C. Super. Ct. June 3, 2015).

{10} The Court heard oral argument on Enterprise's Motion on August 27, 2015. Resolution of Enterprise's Motion and several other motions was delayed

because of a dispute over an affidavit filed after the close of briefing on the motions. Regarding Enterprise's Motion, the Court instructed Brady to file "a specific list of what she contends are the material issues of fact that preclude granting summary judgment to [Enterprise]." Order at 2, *Brady*, No. 12 CVS 7552 (N.C. Super. Ct. Aug. 28, 2015). On September 3, 2015, Brady made a filing that listed as the sole issue of material fact the question of "[w]hether there is a genuine issue of material fact as to the amount, if any, that the Defendants allege are owed to Enterprise Realty by the Plaintiff." Plaintiff's List of Proposed Issues of Material Fact at 1, *Brady*, No. 12 CVS 7552 (N.C. Super. Ct. Sept. 3, 2015). Brady also provided several pages of additional legal argument, which the Court struck as improper by its June 21, 2016 Order.

{11}    Enterprise's Motion is now ripe for decision.

## III.    FACTUAL HISTORY

{12}    Enterprise is a North Carolina LLC that was organized in August 2001 and has a principal office in Fayetteville, North Carolina. Enterprise is or was engaged in the purchase, sale, and rental of real estate.

{13}    Brady is a resident of Cumberland County, North Carolina and is a one-third owner of Enterprise. The Individual Defendants own equal percentages of the remaining interest in Enterprise. Brady and the Individual Defendants are related either by blood or by marriage, and each owns shares in each of the company Defendants.

{14}    Brady was employed by United Tool until May 24, 2012, when her employment was terminated.

{15}    Each of the Members executed the Operating Agreement of Enterprise Realty, LLC ("Operating Agreement") on November 15, 2002. The Operating Agreement provides as follows:

> 1.2. *Additional Funds.* In the event that the Members determine at any time . . . that additional funds are required by [Enterprise] for or in respect of its business or to pay any of its obligations, expenses, costs, liabilities, or expenditures (including, without limitation, any operating deficits), then the Members may

agree by unanimous action to make additional contributions to the capital of the Company or may, acting in their capacities as Managers, borrow all or part of such additional funds on behalf of the Company, with interest payable at then-prevailing rates, from one or more of the Members or from commercial banks, savings and loan associations, or other commercial lending institutions.

1.3. *Additional Capital Contributions.* If the Members determine that additional funds are required for the purposes set forth in Section 5.2 [sic] above and that all or any portion of such additional funds should be contributed to the Company as additional Capital Contributions, the Members, in the absence of any written agreement between them to the contrary, shall make the necessary additional Capital Contributions to the Company in proportion to their respective Percentage Interests at the time such additional contributions are made.

(M. Townsend Aff. Ex. B ("Operating Agreement") art. V, ¶¶ 1.2 to .3, Apr. 9, 2015.)

{16}    Enterprise purchased five properties in 2004 and one property in 2005. Each property required remodeling and repair.

{17}    Enterprise is registered as a member-managed LLC. However, the Members executed a resolution on January 1, 2005, to give M. Townsend full authority over Enterprise's day-to-day management and expressly vested M. Townsend with the authority to determine, in his sole discretion, whether Enterprise required additional funds. He was also given the authority to borrow money on Enterprise's behalf.

{18}    In 2008, the value of Enterprise's properties suffered a marked decline, such that the debt secured by Enterprise's various properties exceeded the properties' value. Enterprise began selling its properties. The first property sold on August 7, 2008. The second sold on April 30, 2009, at a loss, which required Enterprise to make a cash payment to satisfy the secured debt. The Members then began making capital contributions to cover the shortfall and pay down Enterprise's remaining debt, collectively contributing an average of $15,000 per month. Brady personally guaranteed several loans to Enterprise, including one guaranty she provided in 2013.

{19}     On May 24, 2012, United Tool terminated Brady's employment, salary, and benefits on the basis that she was doing no work for United Tool.

{20}     Also on May 24, 2012, the Members, including Brady, agreed to sell all of the remaining properties at a loss in order to mitigate further losses and minimize the company's outstanding debt.  Over the next few years, Enterprise sold its remaining properties for less than the total amount of its loans, which required Enterprise to contribute cash to close the sales.

{21}     All Members made capital contributions to Enterprise up until June 2012, at which time Brady ceased her contributions of approximately $5,000 per month, which constituted one-third of the value of the Members' monthly capital contributions.  Enterprise then began to borrow funds to make up for shortfalls in its budget, and the other Members loaned money to Enterprise to prevent it from defaulting on bank loans that all Members had personally guaranteed.  Some of the loans that Enterprise satisfied in this way—releasing the guarantors' liability for the loan—included loans that Brady had personally guaranteed.

{22}     In March 2013, Enterprise sent Brady a letter detailing $249,291.73 of expenditures that Enterprise had incurred since June 2012 and requesting that Brady make a capital contribution of one-third of that amount, or $83,097.00.  Brady refused and requested information from Enterprise to enable her to verify the amount of her obligation.  Although Brady has consistently represented that she has not been given adequate information to verify that Enterprise was managed responsibly and that Enterprise actually required the funds, during discovery, Brady admitted that Enterprise has provided or given her access to all of the documents to which she is entitled.  (*See* Suppl. Resps. Defs.' First Set Interrogs. Pl. ¶ 14.)

## IV.     ANALYSIS

{23}     On a motion for summary judgment made under Rule 56 of the North Carolina Rules of Civil Procedure, the movant bears the burden of showing that there is no genuine issue of material fact with respect to the essential elements of a

claim and that the movant is entitled to judgment as a matter of law. *See Steel Creek Dev. Corp. v. James*, 300 N.C. 631, 636–37, 268 S.E.2d 205, 209 (1980). Once the movant satisfies that burden, the nonmovant then bears the burden "to present a forecast of the evidence which shows that a genuine issue of fact exists, or to provide an excuse for not so doing." *Watts v. Cumberland Cty. Hosp. Sys., Inc.*, 75 N.C. App. 1, 6, 330 S.E.2d 242, 247 (1985), *aff'd in part, rev'd in part*, 317 N.C. 110, 343 S.E.2d 879 (1986). The Court must view the evidence in the light most favorable to the nonmovant. *See Coats v. Jones*, 63 N.C. App. 151, 154, 303 S.E.2d 655, 657 (1983).

A. <u>Enterprise Is Entitled to Summary Judgment on Brady's Claim for Inspection of Corporate Records.</u>

{24}  Brady's claims against Enterprise and United Realty for inspection of corporate records are identical. The Court dismissed Brady's inspection claim against United Realty on June 3, 2015, based on Brady's admission that she had, during the course of discovery, obtained all documents to which she is entitled. *See Brady*, 2015 NCBC LEXIS 59, at *6–7. Brady's claim for inspection of corporate records against Enterprise should now be dismissed based on the same admission.

B. <u>Enterprise Is Entitled to Summary Judgment on Brady's *Meiselman* Claim.</u>

{25}  Brady asserts that she had reasonable expectations as a one-third owner of Enterprise, including employment and fringe benefits from one of the family companies, a meaningful role in Enterprise's management, and access to Enterprise's financial information. She now claims that judicial dissolution of Enterprise is appropriate because those expectations have been frustrated.

{26}  Subsection 57D-6-02(2) of the North Carolina Limited Liability Company Act ("LLC Act") allows for judicial dissolution of an LLC by a member if "(i) it is not practicable to conduct the LLC's business in conformance with the operating agreement . . . or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." N.C. Gen. Stat. § 57D-6-02(2) (2015). In addition to invoking this statute, Brady also relies on *Meiselman v. Meiselman*,

which involved a closely held corporation, rather than an LLC. *See* 309 N.C. 279, 300–05, 307 S.E.2d 551, 564–67 (1983) (determining the applicable standard of analysis for whether judicial dissolution of a closely held corporation is appropriate). As this Court has noted, "[t]he North Carolina courts have not yet had to address whether . . . [the LLC Act] embodies the same policies [as the North Carolina General Corporation Act] that should equally lead to granting a minority owner in a limited liability company similar rights to protect his reasonable expectations as a minority owner." *Blythe v. Bell*, No. 11 CVS 933, 2013 NCBC LEXIS 7, at *6 (N.C. Super. Ct. Feb. 4, 2013). However, the Court's ruling here does not turn on this possible distinction.

{27}    To prove her *Meiselman* claim, Brady must provide evidence that

> [s]he had one or more substantial reasonable expectations known or assumed by the other participants; (2) the expectation has been frustrated; (3) the frustration was without fault of plaintiff and was in large part beyond h[er] control; and (4) under all of the circumstances of the case, plaintiff is entitled to some form of equitable relief.

*Meiselman*, 309 N.C. at 301, 307 S.E.2d at 564.

{28}    Enterprise bears the initial burden of establishing that there are no disputed issues of material fact with relation to these elements. *See Steel Creek Dev. Corp.*, 300 N.C. at 636–37, 268 S.E.2d at 209. The Court ascertains whether Brady has offered sufficient evidence to support Brady's allegations of her reasonable expectation by reviewing the context of the overall history of the relationship of the parties. *See Meiselman*, 309 N.C. at 299, 307 S.E.2d at 563.

{29}    Brady provides substantial argument that she had a reasonable expectation of employment with one of the family-owned companies and that her expectation was frustrated as to all of the companies when she was discharged from United Tool. The Court does not by this Order & Opinion rule on Brady's expectations as to any other company, but only as to Enterprise.

{30}    Enterprise has presented substantial and uncontested evidence that it has never had any employees, that it has never employed Brady, and that Brady has never expressed the desire to become an Enterprise employee. Further, there is

no evidence that Brady has requested or has been denied employment with Enterprise. The Court finds that, regardless of whether Brady had a reasonable expectation of employment with another company, including United Tool, she had no reasonable expectation of employment with Enterprise that can support her *Meiselman* claim.

{31}    As to Brady's claim that she was denied her reasonable expectation of a meaningful role in Enterprise's management, the uncontested evidence reflects that she was given that right and that she participated in the decision to vest substantial management authority in M. Townsend. While such a delegation should not alone be interpreted to defeat a member–manager's expectation of a management role, *see* N.C. Gen. Stat. § 57D-3-22 (noting that a delegation of management authority does not cause a manager to cease to be a manager), Brady has not presented or forecasted any evidence that she or any of the other Members required M. Townsend to routinely discuss his management activities with them or that she made her desire to be included in M. Townsend's management decisions known to the other Members. *See Meiselman*, 309 N.C. at 301, 307 S.E.2d at 564 (requiring the claimant's reasonable expectations to have been known or assumed by the other participants).

{32}    Further, even if Brady's expectation of a meaningful role in management was reasonable, Enterprise has presented uncontested testimony detailing that the Members, including Brady, had informal conversations regarding repairs to Enterprise's properties and that no one was omitted from those conversations. There is no evidence that Brady was treated any differently in that regard. For example, it is undisputed that during a meeting of the Members on May 24, 2012, all Members, including Brady, agreed to sell the beach properties. The Court concludes that no *Meiselman* claim can be supported by Brady's assertion that she was not informed of the particulars of each sale or of any property renovations or repairs.

{33}    Finally, as noted above, the Court has determined that, even if Brady had a reasonable expectation of access to Enterprise's company records, Enterprise's delivery of those records shows that her expectation has not been frustrated.

{34}    In sum, Brady has not produced a sufficient forecast of evidence that she, as a Member of Enterprise, had reasonable expectations that have been frustrated.  There is, therefore, no legal basis for Enterprise's judicial dissolution based on those expectations, and her claim for such dissolution should be dismissed.  This holding does not adjudicate Brady's *Meiselman* claim as to any company other than Enterprise.[2]

## C.  Enterprise Is Entitled to Summary Judgment on Its Claim that Brady Breached Enterprise's Operating Agreement.

{35}    Enterprise counterclaimed for Brady's breach of the Operating Agreement, alleging that Brady's failure to make capital contributions is a breach of the obligations required by the Operating Agreement when analyzed in conjunction with the subsequent agreements of the Members.

{36}    "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  *One Beacon Ins. Co. v. United Mech. Corp.*, 207 N.C. App. 483, 487, 700 S.E.2d 121, 124 (2010) (quoting *Ahmadi v. Triangle Rent A Car, Inc.*, 203 N.C. App. 360, 362, 691 S.E.2d 101, 103 (2010)).  An LLC's operating agreement is a contract, *N.C. State Bar v. Merrell*, __ N.C. App. __, 777 S.E.2d 103, 114 (2015), and the LLC and its interest-owners are bound by that contract, *see* N.C. Gen. Stat. § 57D-2-31(a)–(b).

{37}    The Operating Agreement requires that the Members make capital contributions in proportion to their respective percentage interests once the Members unanimously agree to make additional capital contributions to pay for Enterprise's obligations, expenses, costs, liabilities, or expenditures.  Although Brady has disputed whether the amount of the requested capital contributions is

---

[2] The Court's ruling in this Order & Opinion effectively resolves, as to Enterprise, Brady's motion for summary judgment, which requests entry of summary judgment in Brady's favor on her *Meiselman* claims.  This ruling does not resolve Brady's motion as to any other company.

proper, she has not disputed that she agreed to make the capital contributions or that she agreed to the actions that led to Enterprise's indebtedness. Further, Brady admits that, in June 2012, she stopped making capital contributions that were used to pay down Enterprise's debt.

{38} Brady argues, in part, that her failures to make the capital contributions should be excused because of the facts underlying her claims against the other Defendants. As noted above, the Court concludes that the actions underlying Brady's claims against the other company Defendants, and particularly the termination of her employment with United Tool, do not translate to claims against Enterprise or defenses to Enterprise's claims and do not excuse Brady's failure to make capital contributions as an Enterprise Member.

{39} Although Brady has also argued that she had not been given adequate information to allow her to verify the amount she owed to Enterprise or to determine whether Enterprise was being mismanaged, Brady now admits that she obtained that information in discovery. When pressed by the Court to detail any contested issue of material fact that the jury should determine, Brady responded with no detail to support her contention that the amount that Enterprise requested was incorrect. The Court concludes that Brady has failed to forecast evidence challenging the amount of Enterprise's request to her for capital contributions.

{40} After viewing all of the evidence in the light most favorable to Brady, the Court concludes that Enterprise has met its burden of proving that there are no disputed issues of material fact regarding Brady's liability for breach of the Operating Agreement as a result of her failure to provide capital contributions and that summary judgment should be entered in Enterprise's favor on that claim.

D. Enterprise's Claim that Brady Breached a Fiduciary Duty Owed to Enterprise Must Be Dismissed.

{41} Enterprise claims that Brady's failure to make capital contributions constitutes a breach of fiduciary duty.

{42} Generally speaking, "[m]embers of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each

other or to the company." *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). However, a manager of an LLC owes a fiduciary duty to the company to discharge his or her duties (1) in good faith, (2) with the care of an ordinarily prudent person, and (3) subject to the operating agreement, in a manner he or she believes to be in the best interest of the company. *Id.* at 473–74, 675 S.E.2d at 137; *see also* N.C. Gen. Stat. § 57D-3-21. Even if the members of a member-managed LLC delegate the authority to act on behalf of the LLC to someone else, the members retain their manager status. *See id.* § 57D-3-22.

{43} The Members delegated to M. Townsend the full and sole discretion to manage Enterprise, but Enterprise remained a member-managed LLC. *See id.* Brady therefore remained one of Enterprise's managers and owed Enterprise a fiduciary duty in her capacity as a member–manager. *See id.* However, LLC managers are not required to make capital contributions. *See id.* § 57D-3-20. Enterprise's Operating Agreement specifically places the obligation of making additional capital contributions on the Members, which it defines as "each Person designated as a member of [Enterprise] on Schedule I [of the Operating Agreement." (*See* Operating Agreement arts. V ¶ 1.2, II ¶ 1.1.) That is, the obligation, if any, to make capital contributions arises as a result of a member's status as a member, not as a result of his or her status as a manager.

{44} The Court concludes that Brady's decision to stop making capital contributions was made in her capacity as a member and that Brady's failure to make such contributions is properly considered as a breach of her contract as a member and not as a breach of the fiduciary duty she owed as a manager. As a result, the Court concludes that Enterprise is not entitled to summary judgment on its counterclaim for breach of fiduciary duty. Instead, this claim must be dismissed. *See* N.C. R. Civ. P. 56(b) ("Summary judgment, when appropriate, may be rendered against the moving party.").

## V. CONCLUSION

For the reasons expressed above, the Court concludes as follows:

1. Summary judgment is GRANTED in favor of Enterprise as to Brady's liability arising from Enterprise's counterclaim for breach of the Operating Agreement, and Enterprise is entitled to recover from Brady the sum of $83,097.00, plus interest.  Payment of such amount shall be deferred until final resolution of Brady's other claims.

2. Summary judgment is DENIED as to Enterprise's claim for breach of fiduciary duty, and this claim is DISMISSED WITH PREJUDICE.

3. Summary judgment is GRANTED in favor of Enterprise on Brady's *Meiselman* claim, and this claim is DISMISSED WITH PREJUDICE.

4. Summary judgment is GRANTED in favor of Enterprise on Brady's claim for inspection of Enterprise's records, and this claim is DISMISSED WITH PREJUDICE.

This the 21st day of July, 2016.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases